DELAWARE VALLEY CITIZENS'
COUNCIL FOR CLEAN AIR,
et al.

v.

COMMONWEALTH OF PENNSYLVA-
NIA, et al.

UNITED STATES of America

v.

COMMONWEALTH OF PENNSYLVA-
NIA, et al.

Civ. A. Nos. 76–2068, 77–0619.

United States District Court,
E.D. Pennsylvania.

Feb. 24, 1984.

Jerome Balter, James S. Lanard, Philadelphia, Pa., for Delaware Valley Citizens' Council for Clean Air et al.

Carol E. Dinkins, Stephen D. Ramsey, Washington, D.C., for U.S.

Ward T. Williams, John M. Hrubovcak, Harrisburg, Pa., for Com. of Pa. Dept. of Transp.

Kenneth A. Gelburd, Philadelphia, Pa., for Com. of Pa. Dept. of Environmental Resources.

#### TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | HISTORY OF THE LITIGATION | 1416 |
| II. | LEGAL FRAMEWORK | 1418 |
| III. | GENERAL GUIDELINES | 1419 |
| | (A) Unsuccessful Claims | 1420 |
| | (B) James S. Lanard | 1420 |
| | a) Contemporaneous Records | 1420 |
| | b) Employee of One of the Plaintiffs | 1421 |
| | (C) Inability to Comply | 1421 |
| | (D) Multiple Attendance at Hearings | 1421 |
| | (E) Hourly Rates | 1421 |
| IV. | COMPENSABLE HOURS | 1422 |
| | (A) Phase I | 1423 |
| | (B) Phase II | 1423 |
| | (C) Phase III | 1423 |
| | (D) Phase IV | 1424 |
| | (E) Phase V | 1426 |
| | (F) Phase VI | 1428 |
| | (G) Phase VII | 1428 |
| | (H) Phase VIII | 1429 |
| | (I) Phase IX | 1429 |
| | a) State Court Litigation | 1429 |
| | b) EPA Regulatory Activity | 1430 |
| | (J) Fee Petition | 1430 |
| V. | MULTIPLIER | 1431 |
| VI. | COSTS | 1431 |
| | APPENDIX | 1433 |

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is a request by plaintiffs for attorneys' fees and costs, under the citizen lawsuit provision of the Clean Air Act, 42 U.S.C. § 7604(d), for legal services rendered by the Public Interest Law Center of Philadelphia. For the reasons which follow, the request will be granted in an award of $209,813.00 in attorneys' fees and an award of $6,675.03 in costs.

### I. HISTORY OF THE LITIGATION

This litigation has its origins in the requirements of the Clean Air Act Amendments of 1970, 42 U.S.C. § 7401, *et seq.* Pursuant to the Act, in April of 1973 the Pennsylvania Department of Environmental Resources ("Penn DER") submitted a plan for meeting federal air quality standards for carbon monoxide and ozone levels in the metropolitan Philadelphia and southwestern Pennsylvania regions. As modified and promulgated by the United States Environmental Protection Agency ("EPA") in November of that year, the plan included a provision requiring the implementation of a program for the inspection and maintenance of automobile emissions systems ("I/M program") by May 1, 1975. 40 C.F.R. § 52.2038 (1981).

When, by mid-1976, an I/M program had not been implemented, Delaware Valley Citizens' Council for Clean Air ("DVCCCA") brought suit under 42 U.S.C. § 7604 against both the Commonwealth defendants and the EPA (the latter for failing to enforce the Commonwealth's obligations). The EPA also instituted an action of its own against the Commonwealth, pursuant to 42 U.S.C. § 7413(b). EPA was then dismissed as a defendant in the DVCCCA suit, and both actions against Pennsylvania were consolidated.

On August 29, 1978, following prolonged discovery and negotiations, the Commonwealth and two of its departments, Penn DER and the Pennsylvania Department of Transportation ("Penn DOT"), agreed to a

final consent decree terminating both the DVCCCA and the United States actions. The defendants agreed to implement an I/M program for ten counties in the Philadelphia and Pittsburgh areas by August 1, 1980. The consent decree provided that Penn DOT would first seek legislation instituting a franchise I/M system under which the Commonwealth would enter into contracts with garage owners for establishment of inspection stations. The decree provided that should the legislature fail to effect such a system, Penn DOT would promulgate regulations providing for a private garage I/M system under which the Commonwealth would certify a number of privately owned facilities to perform the inspections. When the legislature did not enact a franchise system, Penn DOT issued final regulations authorizing the alternative system. 9 Pa.Bull. 4193 (Dec. 22, 1979). As part of the consent decree, the Commonwealth paid DVCCCA $30,000.00 for attorneys' fees and costs and EPA paid DVCCCA $8,700.00 for attorneys' fees and costs.

In late 1979 the Commonwealth requested and obtained agreement from DVCCCA and the EPA to modify the original consent decree so as to delay implementation of the I/M program until May 1, 1981. The modification was approved by this court on March 7, 1980. On February 1, 1981, just three months before the I/M program was scheduled to be implemented under the then-existing consent decree, the Commonwealth had still not published final regulations covering the vehicle emissions analyzing equipment which private garages would have to procure in order to become certified inspection stations. On February 6, 1981 the Commonwealth requested DVCCCA and the EPA to consent to another modification of the consent decree so as to delay the start of the I/M program until January 1, 1983. The need for the 20-month delay was to permit the Commonwealth to require the use of computerized analyzer testing equipment. This type of equipment had been recommended by the EPA for decentralized inspection programs such as the Commonwealth's, since it of-

fered greater accuracy and would therefore enhance public confidence in I/M programs. However, this computerized equipment had not yet been produced by any manufacturer, not even in prototype.

This request for modification was the subject of negotiations among the parties but the parties failed to reach agreement and negotiations came to an impasse. On April 29, 1981 the Commonwealth filed a motion with this court for a modification of the existing consent decree which would delay the start-up of the I/M program from May 1, 1981 to January 1, 1983. On May 1, 1981, DVCCCA filed a motion to have the court hold the Commonwealth in violation of the consent decree's requirement that the Commonwealth implement the I/M program by May 1, 1981.

Following a court conference on May 6, 1981, the EPA, at this court's request, submitted a brief report on the current air quality in the Philadelphia and Pittsburgh areas. After receiving the information which indicated an unsatisfactory state of air quality in the Philadelphia and Pittsburgh areas, this court on May 20, 1981, denied the Commonwealth's request for a modification of the decree, found the Commonwealth in violation of the requirements of the consent decree, and ordered submission of a plan for immediate implementation of the I/M program. The Commonwealth submitted such a plan, and this court approved it with certain amendments suggested by DVCCCA. On June 16, 1981, the decree was modified in several respects including another extension of the deadline for implementation of the I/M program until May 1, 1982. On July 24, 1981, this court denied a Commonwealth motion for reconsideration of the June 16, 1981 Order. The Commonwealth then filed with this court a motion requesting a stay pending the outcome of its appeal of this court's Orders of May 20, 1981 and June 16, 1981. Both this court and the court of appeals denied the motion to stay and on March 1, 1982, the court of appeals affirmed the Orders of May 20, 1981 and June 16, 1981. *Delaware Valley Citizens' Council for*

*Clean Air v. Commonwealth of Pennsylvania,* 674 F.2d 976 (3d Cir.1982). On October 12, 1982, the United States Supreme Court denied the Commonwealth's petition for certiorari. 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982).

In the meantime, following this court's decision in June of 1981, the Pennsylvania General Assembly passed House Bill No. 456, § 2 (H.B. 456), which prohibited the expenditure of state funds by the executive branch for the implementation of the I/M program. Although the Governor vetoed the bill, the legislature overrode the veto and enacted H.B. 456 into law. Act of October 5, 1981, No. 99, § 2, 1981 Pa.Legis. Serv. 312. Penn DOT and the executive branch immediately ceased all efforts toward implementing the I/M program, except for publication of final regulations pertaining to the standards for emission analyzers to be purchased by the private garage owners choosing to participate in the program. 11 Pa.Bull. 3519 (Oct. 10, 1981).

On October 12, 1981, the Commonwealth moved for a stay of the consent decree and for modification thereof on the basis of H.B. 456. DVCCCA moved to declare defendants in civil contempt and to establish sanctions. On January 22, 1982, this court denied the Commonwealth's motion for a stay and declared the Commonwealth and the Secretaries of Penn DOT and Penn DER to be in civil contempt and as a sanction ordered the Secretary of the United States Department of Transportation to refrain from approving any projects or awarding any grants under Title 23 of the United States Code for highways in areas in the Commonwealth covered by the consent decree, other than for purposes of safety, mass transit or transportation projects related to air quality improvement or maintenance. 533 F.Supp. 869 (E.D.Pa. 1982). Defendants appealed and moved for a stay of this court's civil contempt Order pending appeal. A stay was granted by the court of appeals on March 19, 1982. A petition by DVCCCA for a rehearing en banc of the stay was denied on April 6, 1982. On May 21, 1982, the court of appeals affirmed this court's Order of January 22, 1982, declaring the Commonwealth defendants to be in contempt of the consent decree and enjoining the Secretary of Transportation from approving the aforementioned projects or grants. 678 F.2d 470 (3d Cir.1982). The Supreme Court denied both the Commonwealth's application for a stay of the court of appeals' decision and the Commonwealth's petition for certiorari. 458 U.S. 1125, 103 S.Ct. 14, 73 L.Ed.2d 1400 (1982).

On May 3, 1983, the Pennsylvania General Assembly approved Act 1983–3, 1983 Pa.Legis.Serv. Act No. 1983–3 (Purdon), which authorized the defendant Pennsylvania Secretary of Transportation to proceed with the implementation of the I/M program. On May 4, 1983, the Governor of Pennsylvania signed the Act into law. Subsequent negotiations among the parties led to a new compliance schedule establishing June 1, 1984 as the date for commencement of the I/M program. On May 16, 1983, this court ordered that the civil contempt sanction be vacated.

## II. LEGAL FRAMEWORK

[1] The Clean Air Act of 1955, Pub.L. No. 91–604, § 12(a), 84 Stat. 1706 (amended 1977), 42 U.S.C. § 7604(d), provides, in pertinent part:

> The court, in issuing any final order in any action brought pursuant to subsection (a) of this section,[1] may award costs

---

1. The citizen lawsuit provision of the Clean Air Act, 42 U.S.C. § 7604(a), provides, in pertinent part:
> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,
> (2) against the Administrator where there is alleged a failure of the Administrator to per-

of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

Plaintiffs seek attorneys' fees and costs under this provision for all activity performed after the issuance of the consent decree on August 29, 1978. In determining plaintiffs' legal fee award, this court is bound by the framework for determining such awards which has been set forth in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973) (Lindy I) and subsequently refined in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.1976) (en banc) (Lindy II); *Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3d Cir.1974) (Merola I); *Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir.1975) (Merola II); *Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir.1977) (Prandini I); *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir.1978) (Prandini II); *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Hughes v. Repko*, 578 F.2d 483 (3d Cir.1978); *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (1978) and *Walker v. Robbins Hose Co. No. 1, Inc.*, 622 F.2d 692 (3d Cir.1980). This framework requires that the court make a determination of the number of hours reasonably necessary to perform the legal services for which compensation is sought. *Hughes*, 578 F.2d at 487. The reasonable number of hours is then multiplied by a reasonable hourly rate for the attorney providing the services, the latter being based on the court's determination of the attorney's reputation, status and type of activity for which the attorney is seeking compensation. *Lindy I,* 487 F.2d at 167. The sum of the two numbers is the "lodestar" which can then be adjusted upward or downward based on the contingency of success, and the quality of an attorney's work. In all instances plaintiffs have the burden of establishing entitlement to the award claimed and any adjustment to the "lodestar." *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Lindy II,* 540 F.2d at 117.

## III. GENERAL GUIDELINES

At the outset it should be noted that unlike other cases where attorneys' fees have been awarded, this case was not one where the parties filed suit, out of which a decision was rendered and the parties then went their separate ways in obedience to that decision. This case has required constant monitoring of the consent decree both by the court and plaintiffs in order to ensure compliance by defendants with both the letter and spirit of the decree as well as to protect the plaintiffs' and the public's rights under the decree.

During the litigation and up until the present day, there has existed an intense adversarial atmosphere among all concerned parties.[2] The defendants' presence has constantly been dominated by either a policy or an attitude that has tried to prohibit or delay the implementation of the I/M program in response to which the plaintiffs have constantly held fast to their position, without being totally inflexible. Additionally, plaintiffs have been required to partake in activities which, while not directly required under the consent decree, were sufficiently related to its goals and the ongoing litigation that such efforts should, and will be compensated for in some reasonable measure.

form any act or duty under this chapter which is not discretionary with the Administrator, or (3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to be in violation of any condition of such permit.

2. Evidence of the continuing adversarial relationship is the bill recently introduced into the Pennsylvania legislature which, if enacted, would attempt to preclude payment of any counsel fees awarded in this litigation. H.R. 1702, 167th Regular Session, Session of 1983 (Printer's No. 2172).

In their petition for attorneys' fees and costs, plaintiffs have divided the requests for compensable hours into nine phases, each phase relating to a different aspect of the litigation. In their response opposing the fee petition, defendants have made specific objections to each phase as well as general objections which pertain to all phases. The court will address the general objections in this section and any specific objections which warrant consideration in the discussion of the compensable hours of each phase.

### (A) *Unsuccessful Claims*

■ Defendants assert that plaintiffs should not be compensated for aspects of this litigation on which plaintiffs were unsuccessful. This argument must be rejected. For this court to itemize each motion, request or claim that has been presented in this complex and prolonged litigation and determine whether plaintiffs were "successful" would be unnecessary as well as impossible. Such an analysis is not required where, as here, plaintiffs have clearly prevailed in attaining what they sought and what would not have occurred without their efforts. This determination follows the recent Supreme Court case of *Hensley v. Eckerhart,* — U.S. —, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The issue before the Court in *Hensley* was whether a partially prevailing plaintiff could recover, under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, an attorney's fee for legal services on unsuccessful claims. The Court stated that where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised by plaintiff. *Hensley,* — U.S. at —, 103 S.Ct. at 1942. There being no

doubt that plaintiffs have won substantial relief in this court,[3] this court refuses to piecemeal the individual motions and claims which were presented during the litigation.

### (B) *James S. Lanard*

#### a) *Contemporaneous Records*

■ Defendants oppose any award for work done by James Lanard on the grounds that: 1) Mr. Lanard failed to keep contemporaneous time records for much of the period involved; and 2) Mr. Lanard's attempt to reconstruct time records is a sham. While contemporaneous time records are the most desirable way of proving time spent, such is not the only way. Although mere estimates of time are not acceptable, an allowance of attorney's fees may be based on a reconstruction, provided that the records are substantially reconstructed and are reasonably accurate. *Lindy II,* 540 F.2d at 109.

■ Although all other attorneys who worked on this case have submitted time cards for the work they did, there are certain periods during the litigation when Mr. Lanard failed to keep time cards. For such periods, as more specifically set forth in the respective phases, Mr. Lanard has attempted to reconstruct the time spent through reference to notations on his calendar, his notes, specific events related to the case, telephone bills, time sheets and memos drafted with regard to the amount of time spent on this matter. The court, after examining the record in this case and comparing such with Mr. Lanard's requests, is satisfied that the reconstruction was, for the most part, carefully and accurately done. *Lindy II,* 540 F.2d at 109. However, since some of Mr. Lanard's hours are based on reconstruction, the court must

---

**3.** In the recent Pennsylvania Supreme Court case of *Scanlon v. Commonwealth of Pennsylvania,* 502 Pa. 577, 467 A.2d 1108 (Pa.1983), the court held that Penn DOT lacked the authority to enter into the federal consent decree involved in the present lawsuit. A subsequent injunction was issued by the Pennsylvania Commonwealth Court which permanently enjoins Penn DOT from carrying out any activities required by the original consent decree or its modifications. *Burd v. Commonwealth of Pennsylvania,* No. 1506 (Jan. 9, 1984). While such rulings may be binding on this court to the extent they interpret the powers of a state agency, the rulings do not and cannot set aside an existing federal consent decree and do not affect the substantial relief plaintiffs have attained in this court.

require more from Mr. Lanard than would normally be required from an attorney who has submitted contemporaneous time cards. For this reason, time requested by Mr. Lanard which is based on either: 1) time sheets which do not include specific activity but merely follow the chronological history of the case; or 2) on memos drafted for the purpose of relating the time spent, will be denied. The court finds that for such periods Mr. Lanard makes no more than general allegations as to the type of work he has done, failing to meet the specificity which is required in fee petitions.

### b) *Employee of One of the Plaintiffs*

■ Defendants also oppose any award for Mr. Lanard's work on the ground that he was Executive Director of DVCCCA during the litigation. Defendants assert that where a client engages an attorney, the client must aid the attorney but cannot collect attorney fees. Since Mr. Lanard was an officer of DVCCCA, one of the plaintiffs, defendants contend that his hours as an attorney should not be the basis of any award.

While the general rule may be that an attorney who acts for himself is not entitled to a counsel fee against his adversary, *see Picking v. Pennsylvania R.R. Co.*, 11 F.R.D. 71 (M.D.Pa.1951), general rules do not apply in this case. For much of this litigation Mr. Lanard was the only individual working on a particular aspect of the case. Additionally, Mr. Lanard performed a large part of all the activity for which plaintiffs now seek compensation. To deny any award of attorney fees based on Mr. Lanard's activities would not be equitable under the circumstances of this case.[4]

### (C) *Inability to Comply*

■ Defendants assert throughout their response to plaintiffs' fee petition that they should not be responsible for fees incurred by plaintiffs if the fees were generated in response to activities of governmental branches, other than the executive branch, which impeded implementation of the I/M program. However, as the court of appeals has stated, not only was the executive branch of the Commonwealth bound by the consent decree but all branches were so bound. 678 F.2d 470, 475, *cert. denied,* 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). Accordingly, there being no distinction among the branches as to being bound by the decree, there will be no distinction as to the cause of fees incurred by plaintiffs in defending their rights under the consent decree.

### (D) *Multiple Attendance at Hearings*

■ Defendants contend that if plaintiffs receive any award, it should not include time spent by an attorney at a hearing unless that attorney was the one who presented plaintiffs' position at the hearing. The court agrees.

While it is true that more than one attorney has worked on plaintiffs' case, at all times during the hearings only one attorney spoke on behalf of the plaintiffs. While plaintiffs contend that the presence of the other attorneys working on the case was necessary for an understanding of the case, the court is quite sure that if the arguing attorney was competent enough to argue the case, he was competent enough to explain the events of a hearing to his colleagues. Mere attendance in the courtroom by attorneys who were not the principal advocates for the cause is not entitled to compensation.

### (E) *Hourly Rates*

■ The current fee petition requests hourly rates which increase from year to year. While this court recognizes that attorneys' fees do rise over a period of time and that the period covered by the fee petition spans five years, it is more appropriate in this instance to calculate an average rate for each type of work performed during the five years. *See In re Fine*

---

**4.** It should also be noted that the court has denied a large percentage of the hours requested by Mr. Lanard, not on the basis of being an employee of DVCCCA but rather, for failure to submit adequate time records for his activities. *See* section III (B) *supra.*

*Paper Antitrust Litigation,* 98 F.R.D. 48, 83 (E.D.Pa.1983). In arriving at these rates the court has evaluated the status, reputation and experience of the individual attorneys who performed the activity. The attorneys who performed tasks that required no significant legal ability will not be compensated at high hourly rates just as attorneys who performed clerical or administrative tasks will not be compensated for performing legal tasks. With that in mind, the reasonable average hourly rate for work which this court finds to be the most difficult will be $100.00. For work this court finds could have been done by an attorney working at the associate level, an average hourly rate of $65.00 will be applied. For work associated with legal work but which required little or no legal ability, the court will grant an average hourly rate of $25.00.

## IV. COMPENSABLE HOURS

### (A) Phase I—Failure of Commonwealth to Comply with the Consent Decree of August 29, 1978

[9] Pursuant to the consent decree of August 29, 1978, the Commonwealth was to commence the I/M program by August 1, 1980. One of the prerequisites for commencement was the publishing, by the Commonwealth, of proposed regulations for the program. Publication was to have been completed by July 1, 1979. The Commonwealth having failed to comply with this requirement, DVCCCA moved to find the Commonwealth in violation of the decree on July 30, 1979. Prior to a hearing before this court on September 20, 1979, at which a new implementation schedule was established, the regulations were published.

Defendants contend that plaintiffs should be precluded from recovering any award for this phase due to plaintiffs' bad faith in refusing to agree to a requested three month extension. This court disagrees that plaintiffs' refusal to grant an extension regarding publication of the regulations was in bad faith. Moreover, plaintiffs had every right to proceed in the manner that they did. The consent decree set forth the date before which publication was required and defendants failed to comply. Plaintiffs' actions were appropriate and required in order to protect their rights as set forth in the decree.

Albert Slap expended 37 hours and Eric Beller expended 6.9 hours in this phase of the case. The court finds that the activities performed by Mr. Slap and Mr. Beller in this phase were reasonably necessary and not excessive or duplicative.

Mr. Lanard's hours for Phase I work have been reconstructed from his calendar, his notes and specific events related to the case. In this phase, the court finds that Mr. Lanard's reconstruction of hours is specific enough and accurate enough that the hours should be granted. However, because Mr. Lanard's request includes time spent in preparation for the contempt hearing and for attendance at the hearing, the time granted will be reduced from the 29 hours requested to 25 hours.[5] These 25 hours were necessary and not excessive for the work performed.

A reasonable average hourly rate for the activities performed in Phase I by Mr. Slap is $65.00, most of the activities involving telephone calls, meetings and discussions. The same average hourly rate will be applied to the compensable hours of Mr. Beller and Mr. Lanard, since their activities consisted of research, discussions, meetings and submission of comments to the regulations.

---

**5.** Although this court is of the opinion that it was Mr. Slap who represented plaintiffs at the contempt hearing, the court can find no information to indicate whether Mr. Slap or Mr. Lanard actually represented plaintiffs at the contempt hearing. However, to the extent it was Mr. Lanard who actually represented plaintiffs at the hearing, the attorney fee award for this phase need not be changed since Mr. Slap has been granted hours for the activity at the same hourly rate as applied to Mr. Lanard's activities in Phase I.

**PHASE I**

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| Mr. Slap | 37 | $65 | = | $2405.00 |
| Mr. Beller | 6.9 | $65 | = | $ 448.50 |
| Mr. Lanard | 25 | $65 | = | $1625.00 |
| | | Phase I Lodestar -------- | | $4478.50 |

### (B) *Phase II—Revisions of Original Consent Decree*

Following the publication of the I/M program regulations and the court hearing on September 20, 1979, DVCCCA continued to monitor defendants' performance under the consent decree and submitted comments on the regulations which were published in the Pennsylvania Bulletin. Plaintiffs request a total of 41 hours for this phase, 37.5 hours for Mr. Lanard, and 3.5 hours for Mr. Slap.

The publishing of the regulations was required under the consent decree. While it is true that the opportunity to submit comments to the proposed regulations was available to any person, it does not follow, as defendants contend, that plaintiffs should not be compensated for the time used in preparing comments. Plaintiffs had an interest in the regulations since they were a party to the consent decree. Their interest was based on a desire to ensure compliance with the consent decree and to protect their rights thereunder. The usefulness of plaintiffs' comments was manifested in the revisions that were made to the original proposed regulations.

Plaintiffs' request for 37.5 hours for Mr. Lanard's work is based on a reconstruction formed by references to his notes. The court determines that, while the reconstruction was carefully and accurately done, the number of hours for the work claimed is excessive. For this activity which mostly includes submitting comments to the regulations, reviewing EPA's submissions and attendance at a meeting to discuss the regulations, 25 hours is a reasonable amount of time.

The request for 3.5 hours expended by Mr. Slap is based on attendance at a conference regarding the consent decree and on consent decree monitoring. The court, being unable to determine what activities constituted the consent decree monitoring will reduce the requested hours to 1.5 hours.

A reasonable average hourly rate for the activities performed by Mr. Lanard and Mr. Slap is $65.00 since such activities are not the type entitled to the higher hourly rates reserved for more difficult work.

**PHASE II**

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| Mr. Lanard | 25 | $65 | = | $1625.00 |
| Mr. Slap | 1.5 | $65 | = | $ 97.50 |
| | | Phase II Lodestar ------- | | $1722.50 |

### (C) *Phase III—Modification of the August 29, 1978 Consent Decree*

Due to the substantial number of comments to the proposed regulations a modification to the consent decree was required. Such modification, approved by this court on March 7, 1980, delayed commencement of the I/M program from August 1980 until May 1981.

Plaintiffs have requested that this court grant 2.2 hours for work Mr. Balter did regarding this modification. The work for which compensation is sought is an analysis of ozone formation and a reading of the amended decree, work that was reasonably necessary and for which plaintiffs will be compensated.

Plaintiffs request that 61.75 hours be approved for time spent by Mr. Lanard in this phase. The hours requested are hours reconstructed from Mr. Lanard's notes and calendar. Although the court determines that for the most part the reconstruction was carefully and accurately done, the amount of time expended was excessive and in some cases is not sufficiently described. The review of pending legislation that may have affected the I/M program and of proposals regarding modification could reasonably have been completed in 6 hours. Additionally, the 10.5 hours spent on the "Thornburgh memo" and .25 hours on activity which is unspecified will be denied since this court is unable to determine what activities these hours cover and how much time would be required to reasonably

perform these tasks. Accordingly, for all the necessary activities performed by Mr. Lanard in Phase III, 26 hours is a reasonable amount of time in which these activities could have been performed.

Mr. Balter's hours will be compensated at the rate of $25.00 per hour since the activities did not require any legal analysis. Mr. Lanard's hours will be compensated at the rate of $65.00 per hour. Despite being plaintiffs' lead counsel in this phase, the activities performed by Mr. Lanard, which included attendance at hearings, were not the type of activities which should be compensated at a high hourly rate.

PHASE III

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| Mr. Balter | 2.2 | $25 | = | $ 55.00 |
| Mr. Lanard | 26 | $65 | = | $1690.00 |
| | | Phase III Lodestar | ------ | $1745.00 |

6. The activities in this phase for which plaintiffs seek compensation were based on the following events:

April 29, 1981: The Commonwealth filed a motion to modify the consent decree to delay the start of the I/M program from May 1, 1981 to January 1, 1983.

April 30, 1981: The Commonwealth moved for a stay of the consent decree.

May 1, 1981: DVCCCA filed a motion to declare the Commonwealth in violation of the consent decree.

May 6, 1981: The court convened a conference to hear the views of the parties on the foregoing motions.

May 20, 1981: The court, after receiving a requested report from the EPA on air quality in the regions affected by the consent decree, issued an order declaring the Commonwealth in violation of the consent decree and denying the Commonwealth's motion for a stay and denying the motion for a modification.

June 1, 1981: The Commonwealth moved for reconsideration of the court Order of May 20.

June 8, 1981: DVCCCA filed its answer to the Commonwealth's request for reconsideration.

June 8, 1981: DVCCCA filed its comments to the Commonwealth's proposals for implementing I/M.

June 10, 1981: The court held a hearing on the Commonwealth's motion for reconsideration and the Commonwealth's proposals for implementing I/M.

June 16, 1981: The court issued an Order denying the request for reconsideration and establishing May 1, 1982 as the start-up date for an I/M program.

(D) *Phase IV—Commonwealth in Violation of the First Modification of the Consent Decree*

In February of 1981, the Commonwealth requested a second modification of the consent decree to extend the date of commencement of the I/M program on the basis that the EPA had recommended, for states such as Pennsylvania, a type of emission analyzer different from the one required under the consent decree. Negotiations failed to resolve the matter and on April 29, 1981, the Commonwealth filed a motion to modify the decree and delay the start of the I/M program until January 1, 1983. A substantial amount of litigation followed ending with the Supreme Court's denial of the Commonwealth's petition for certiorari on October 12, 1982. *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982).[6]

June 26, 1981: The Commonwealth filed a motion for reconsideration of the court Order of June 16, 1981.

July 8, 1981: DVCCCA filed its answer in opposition to the request for reconsideration.

July 14, 1981: The Court denied the Commonwealth's request for reconsideration.

July 30, 1981: The Commonwealth filed a notice of appeal to the circuit court in respect to the court Orders of May 20 and June 16.

July 30, 1981: The Commonwealth filed a motion to this court requesting a stay pending the outcome of its appeal to the circuit court.

August 10, 1981: DVCCCA filed its answer in opposition to the Commonwealth's request for a stay.

August 20, 1981: This court denied defendants' motion for stay pending appeal.

August 7, 1981: Commonwealth filed notice of appeal in re this court's Orders of May 20, 1981 and June 16, 1981.

August 27, 1981: Commonwealth filed motion for stay of this court's Order of June 16, 1981.

September 4, 1981: DVCCCA filed response in opposition to Commonwealth's request for stay.

September 11, 1981: Commonwealth motion for expedited hearing.

September 14, 1981: Circuit court denied motion for stay.

September 18, 1981: Circuit court denied motion for expedited hearing.

October 9, 1981: DVCCCA filed brief in opposition to Commonwealth's appeal brief.

February 2, 1982: Circuit court hearing on Commonwealth appeal.

Plaintiffs have requested 3 hours for Mr. Gilhool's attendance at a court hearing held on February 2, 1982. For the reasons stated in section III(D) above, the hours will be denied. For the same reason, the time requested for Mr. Churchill will be reduced by 3 hours; the remaining 5.1 hours of Mr. Churchill were reasonable and necessary to the events in Phase IV.

█ Plaintiffs have requested 398.75 hours for Phase IV work performed by Mr. Lanard. The hours requested are based on time reconstruction and contemporaneous records. The hours which are based on reconstruction and which cover the period from January 1, 1981 until August 20, 1981, will be denied as not being specific enough, not necessary and not reasonable. Although Mr. Lanard has attempted to adequately reconstruct the hours for this time period, the court finds that it would neither be reasonable nor fair to allow plaintiffs to be compensated for the substantial number of hours simply noted as "Commonwealth Request for 20 months," "Negotiations re: Commonwealth Request for 20 months," "DVCCCA Motion to Declare Comm. in violation of Consent Decree," and "Answer to Commonwealth Motion to Reconsider and Comments to Comm. Proposed I/M Plans." Further explanation as to what work was performed is required. Additionally, the requested hours for this phase include: 1) hours for preparation for and attendance at a court hearing at which Mr. Lanard's presence was not necessary; and 2) hours for time spent on reconstruction, time which would have been unnecessary had Mr. Lanard kept contemporaneous records.

For the period in Phase IV commencing on August 24, 1981, Mr. Lanard kept contemporaneous time records. The court finds that, with certain exceptions, such time was necessary and not duplicative of work being performed by any other attorney. The exceptions include hours requested for Mr. Lanard's preparation and attendance at hearings at which his presence was unnecessary. Accordingly, the court finds that a reasonable amount of time for the compensable activities performed in Phase IV by Mr. Lanard is 52 hours.

Plaintiffs have requested 337.10 hours for the work performed in Phase IV by Mr. Balter. Initially it should be noted that the work performed in this phase of the litigation spanned a period of eleven months and involved a number of court hearings, including a request for a stay and an appeal to the court of appeals. The period also covers activity which, while not litigation activity per se, was, for the most part, sufficiently related to the enforcement of the consent decree and the I/M program. Accordingly, upon examination of the carefully documented records, the court determines that 330 hours is a reasonable amount of time for the necessary work performed by Mr. Balter in this phase.

The hourly rate for the Phase IV work performed by Mr. Churchill will be compensated at a rate of $65.00 per hour. The work performed included attendance at conferences and the reading of drafts and opinions. Such activity was short in duration, not requiring and actually precluding any type of significant legal analysis.

The work performed by Mr. Lanard for which he will be compensated included: 1) research on the Commonwealth's motion for a stay and its appeal of this court's orders; 2) meetings with co-counsel; and 3) a meeting with the Bucks County Garage Association, Hamilton Test System and Penn DOT, a meeting which this court determines was reasonable and necessary in order to protect both plaintiffs' rights and the integrity of the consent decree. Although Mr. Lanard's Phase IV activity in-

March 1, 1982: Circuit court affirms this court's Order of May 20, 1981 and Order of June 16, 1981.
March 12, 1982: Commonwealth petition for *rehearing en banc.*
March 26, 1982: Circuit court denied petition for rehearing.

June 22, 1982: Commonwealth petition to United States Supreme Court for writ of certiorari.
July 22, 1982: DVCCCA filed brief in opposition to petition for certiorari.
October 12, 1982: United States Supreme Court denied petition for certiorari.

cluded some legal work, the legal work performed, as well as the other activities, was not the type of activity which should be compensated at a high hourly rate reserved for more difficult legal activities. Accordingly, Mr. Lanard's work in Phase IV will be compensated at a rate of $65.00 per hour.

The work performed by Mr. Balter in this phase was work typical of work performed by lead counsel in any complex litigation and involved representation of his client's interests both before this court and the court of appeals on matters that could have delayed the implementation of the I/M program beyond an acceptable period. Accordingly, the activity should be compensated at a high hourly rate. Mr. Balter's

activities in Phase IV will be compensated at a rate of $100.00 per hour.

#### PHASE IV

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| Mr. Churchill | 5.1 | $65 | = | $ 331.50 |
| Mr. Lanard | 52 | $65 | = | $ 3,380.00 |
| Mr. Balter | 330 | $100 | = | $33,000.00 |
| | | Phase IV Lodestar ----- | | $36,711.50 |

(E) *Phase V—Pennsylvania Legislature Prohibits Compliance with Consent Decree*

Following this court's Order of June 16, 1981, the Pennsylvania General Assembly, over veto of the Governor, enacted H.B. 456 into law, preventing expenditure of state funds for implementation of the I/M program. The substantial amount of litigation which followed is the basis for the hours requested for this phase.[7]

7. The activities in Phase V for which plaintiffs seek compensation were based on the following events:

October 12, 1981: Commonwealth moves for stay of consent decree and for modification of consent decree as a result of H.B. 456.

October 19, 1981: DVCCCA moves to declare defendants in civil contempt and to establish sanctions.

October 29, 1981: DVCCCA brief in opposition to Commonwealth's motion for modification.

November 6, 1981: DVCCCA memorandum in re United States memorandum.

November 20, 1981: Court hearing on DVCCCA contempt motion.

December 12, 1981: DVCCCA submits brief to this court concerning applicability of Contract Clause of the United States Constitution.

December 30, 1981: United States submits reports to this court on status of I/M program.

January 5, 1982: DVCCCA comments on United States' report.

January 22, 1982: This court declares defendants to be in civil contempt and imposes civil contempt sanctions.

February 9, 1982: Commonwealth moves for stay of January 22, 1982 Order.

February 22, 1982: DVCCCA memorandum in opposition to stay request.

February 18, 1982: This court denies Commonwealth request for stay.

February 5, 1982: Commonwealth notice of appeal to Third Circuit Court of Appeals of this court's Order of January 22, 1982.

March 8, 1982: Commonwealth motion for stay of January 22, 1982 contempt order.

March 16, 1982: DVCCCA brief in opposition to motion for stay.

March 19, 1982: Circuit court hearing on motion for stay.

March 19, 1982: Circuit court grants stay of contempt sanction.

March 23, 1982: DVCCCA petition for *rehearing en banc.*

April 6, 1982: Circuit court denies DVCCCA petition for rehearing.

April 13, 1982: DVCCCA brief in opposition to Commonwealth's appeal.

May 13, 1982: Circuit court oral arguments on Commonwealth's appeal of this court's Order of January 22, 1982.

May 21, 1982: Circuit court affirms this court's Order of January 22, 1982.

June 7, 1982: Commonwealth motion for stay of circuit court ruling.

June 14, 1982: DVCCCA memorandum in opposition to motion for stay.

June 23, 1982: Circuit court denies motion for stay.

June 27, 1982: Commonwealth application to United States Supreme Court for stay.

July 29, 1982: DVCCCA memorandum to United States Supreme Court in opposition to motion for stay.

July 30, 1982: Mr. Justice Brennan denies motion for stay.

August 6, 1982: Commonwealth application for stay to Mr. Justice Rehnquist.

August 6, 1982: DVCCCA memorandum in opposition to request for stay.

September 9, 1982: United States Supreme Court denies application for stay.

August 17, 1982: Commonwealth petition for writ of certiorari filed with Supreme Court.

October 7, 1982: DVCCCA files brief in opposition to Commonwealth's petition for certiorari.

November 1, 1982: United States Supreme Court denies writ of certiorari.

Plaintiffs' request for 13.6 hours for Mr. Gilhool's work will be reduced to 6.1 hours due to unnecessary attendance at a court hearing and failure to describe in the contemporaneous time cards what activities were performed by Mr. Gilhool on the 5th and 6th of April 1982. The remaining 6.1 hours were reasonable and necessary.

▬ Plaintiffs have requested 35.25 hours for the Phase V work performed by Mr. Churchill. This request includes unnecessary time spent at court hearings and at a press conference which was not required under the consent decree nor which was necessary to protect plaintiffs' rights under the decree. The time requested also covers work which was duplicative of the work being performed by Mr. Balter and Mr. Lanard in Phase V. Accordingly, a reasonable amount of time required to perform the necessary work that Mr. Churchill performed in Phase V is 20 hours.

▬ Plaintiffs request 105.5 hours for work performed by Mr. Lanard in this phase, such request being based on contemporaneous time records of Mr. Lanard. Most of the activities performed by Mr. Lanard in this phase were reasonable and were related to the contempt proceedings and the "contract clause" memo required by this court's Order of November 11, 1981. As such, the time spent will be compensated with certain exceptions. The requested time will be reduced due to unnecessary attendance at a court hearing, time sheet notations which are illegible and indications that there is some uncertainty as to the significance of certain activities (time sheet 9/25/81; 10/6/81; 10/19–10/28/81; 11/20/81). A reasonable amount of time for this work which was necessary and prolonged due primarily to the presence of complex issues which required a substantial number of hours, is 88 hours.

▬ For Phase V work performed by Mr. Balter plaintiffs request 465.9 hours. During this phase Mr. Balter worked on the issues dealing with holding the Commonwealth in contempt, issues that required extensive research and analysis.

However, once the research and analysis had been completed there was no need to spend the amount of time that was spent on similar research and analysis for the stay requests or appeals. A reasonable amount of time for all of the activities associated with the contempt order in this phase performed by Mr. Balter is 200 hours. Additionally, Mr. Balter performed certain activities in Phase V which, while not related to the contempt order, were sufficiently related to this litigation that they should be compensated. A reasonable amount of time required to perform such activities is 10 hours, such determination including denials of requested time for press conferences and interviews and for activities for which this court has determined there is inadequate explanation (time sheet 3/23/82; 6/24/82; 9/14/82).

The work performed by Mr. Gilhool and Mr. Churchill in Phase V for which they will be compensated consisted mostly of attending conferences and performing activities for which no original legal analysis was required. Moreover, the time spent on each activity was of such short duration that neither attorney could have been involved to any great extent in the complex issues of Phase V. Accordingly, Mr. Gilhool and Mr. Churchill will be compensated at a rate of $25 per hour.

Most of the activities which Mr. Lanard performed in Phase V dealt with researching issues relating to the contempt order and the Constitution's contract clause. Since Mr. Lanard was more involved in this phase of the litigation than Mr. Gilhool or Mr. Churchill, and since his activities consisted of legal analysis, he will be compensated at a rate of $65 per hour.

Mr. Balter was unquestionably the lead counsel for plaintiffs in this part of the litigation. He represented plaintiffs at all the hearings as well as doing much of the groundwork which was helpful in resolving the difficult issues before this court. This was not the type of work that would be assigned to any one other than an attorney with a high degree of skill. Accordingly,

Mr. Balter will be compensated at a rate of $100.00 per hour.

PHASE V

| | Compensable Hours | Hourly Rate | | | |
|---|---|---|---|---|---|
| Mr. Gilhool | 6.1 | $25 | = | $ | 152.50 |
| Mr. Churchill | 20 | $25 | = | $ | 500.00 |
| Mr. Lanard | 88 | $65 | = | $ | 5,720.00 |
| Mr. Balter | 210 | $100 | = | $21,000.00 | |
| | | Phase V Lodestar | ------ | $27,372.50 | |

(F) *Phase VI—Intervention of Third Parties*

■ A number of unsuccessful attempts were made to intervene in this action.[8] Plaintiffs request that attorney fees be awarded for their attempts to oppose these interventions. Defendants contend that they should not be held accountable for actions of others to which plaintiffs responded.

With regard to the intervention attempt by Representatives and Senators of the Commonwealth, defendants' argument fails for the reason that the identities of those who sought to intervene were not that distinct from that of the executive branch so as to preclude recovery against defendants. Moreover, for the purpose of being bound by the consent decree, all the branches of the Commonwealth were characterized as being as one. *See Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 678 F.2d 470 (3d Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). Additionally, plaintiffs' opposition to all of the intervention attempts was for the purpose of protecting their rights under the consent decree. Had plaintiffs not opposed the interventions, as they had the right to do, their rights in enforcing the decree may have been prejudiced. Such a conclusion is amply supported by a recent Pennsylvania Supreme Court decision, the case having been brought by a number of Pennsylvania legislators. That decision purportedly

8. The attempted interventions, which plaintiffs opposed, were attempts by Pennsylvania legislators and an attempt by the City of Pittsburgh.

9. As stated previously in note 3, *supra,* the part of the Pennsylvania Supreme Court's decision in

eradicates plaintiffs' right under the consent decree.[9]

Based on contemporaneous time records of Mr. Lanard, plaintiffs request 37.5 hours for time Mr. Lanard spent on activities related to the intervention attempts by state legislators. Such activities included the researching and writing of the brief opposing intervention and preparation for argument before the court of appeals. The court finds that 15 hours is a reasonable amount of time to be spent on such activity.

Plaintiffs request 17.5 hours for work performed by Mr. Balter on the intervention attempt by the City of Pittsburgh. The court finds that 13 hours is a reasonable amount of time to spend on the activity, such activity being preparation of a brief submitted to the court of appeals.

A reasonable hourly rate for the activities performed by Mr. Lanard and Mr. Balter in Phase VI is $65.00 per hour.

PHASE VI

| | Compensable Hours | Hourly Rate | | | |
|---|---|---|---|---|---|
| Mr. Lanard | 15 | $65 | = | $ | 975.00 |
| Mr. Balter | 13 | $65 | = | $ | 845.00 |
| | | Phase VI Lodestar | ----- | $1,820.00 | |

(G) *Phase VII—Certification of Exceptions to Court Order Of January 22, 1982*

■ Compensation sought for work in this phase of the litigation is based on plaintiffs' monitoring of the contempt sanction and their opposition to the Commonwealth's attempt to certify certain projects as exceptions to this court's contempt Order of January 22, 1982. Both activities were reasonably related to the litigation and necessary in order to protect plaintiffs' rights under the consent decree. As such, the necessary hours expended should be compensated.

*Scanlon v. Commonwealth of Pennsylvania,* 502 Pa. 577, 467 A.2d 1108 (Pa.1982), which suggests that the federal consent decree is invalid is not binding on this court and therefore does not affect plaintiffs' rights under the consent decree.

Plaintiffs request 6.8 hours for Mr. Gilhool's work in Phase VII. All the hours will be denied as unnecessary since they were duplicative of the hours spent by Mr. Balter and Mr. Churchill. Mr. Churchill's hours, while not duplicative, are to a certain extent inadequately documented and include hours for unnecessary attendance at court hearings. Accordingly, plaintiffs will be granted 5.7 of the 8.15 hours requested for Mr. Churchill's Phase VII work, such hours being reasonable and necessary.

Plaintiffs request 88.3 hours for Phase VII work performed by Mr. Balter. For the most part the hours cover preparation for and attendance at court hearings and depositions dealing with the certification of certain highway projects as exceptions to the contempt sanction. Although this work was necessary the number of hours expended was excessive. A reasonable number of hours necessary for all the activities included in Phase VII performed by Mr. Balter is 50 hours, the court having determined that the hours spent on the memorandum to this court regarding the certification projects and on the subsequent appeal were excessive.

The hourly rate for work performed by Mr. Churchill will be $65.00 and the hourly rate for Mr. Balter will be $100.00, such rates being reasonable for the activities performed.

#### PHASE VII

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| Mr. Churchill | 5.7 | $65 | = | $ 370.50 |
| Mr. Balter | 50 | $100 | = | $5,000.00 |
| | Phase VII Lodestar | ----- | | $5,370.50 |

#### (H) *Phase VIII—Passage of I/M Legislation and Vacating of Sanctions*

Plaintiffs claim 43.5 hours for activities in connection with: 1) passage of Act 3 of 1982[10] which permitted implementation of the I/M program to go forward; and 2) this court's removal of the contempt sanc-

tions on May 16, 1983. The number of requested hours in this phase is 43.5, all the hours being based on work performed by Mr. Balter.

Defendants contest awarding fees for time spent on "preparation of a stipulated penalty motion" (Balter's time sheet 5/9/83–5/12/83). Plaintiffs have stated that they have no knowledge of such a motion (DVCCCA reply brief at 27). Accordingly, no time will be awarded for such. The hours spent during May 4, 1983, through May 6, 1983, were excessive and will be reduced by one-half. The total number of reasonable hours in Phase VIII necessary to this litigation was 24 hours. A reasonable rate for these hours expended is $65.00 per hour, the activities not requiring any detailed legal analysis and consisting of several meetings.

#### PHASE VIII

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| Mr. Balter | 24 | $65 | = | $1560.00 |
| | Phase VIII Lodestar | ---- | | $1560.00 |

#### (I) *Phase IX—Associated Activities*

In this phase plaintiffs seek compensation for activities their attorneys performed in state court litigation and in regulatory actions, such activities not directly required by this court's Orders.

#### a) *State Court Litigation*

Plaintiffs request a total of 23.6 hours for work their attorneys performed in connection with attempts in state court by several members of the Pennsylvania General Assembly to prevent implementation of the I/M program. *See Burd v. Commonwealth of Pennsylvania,* 66 Pa. Commw. 129, 443 A.2d 1197 (1982).[11] Defendants contend that such request should be denied alleging that: 1) they were the ones who prepared the legal documents and presented all the legal arguments in this state litigation; and 2) plaintiffs' role

---

**10.** 1983 Pa.Legis.Serv. Act No. 1983–3 (Purdon).

**11.** Both the *Burd* case and *Scanlon v. Commonwealth of Pennsylvania,* 66 Pa.Commw. 129, 443 A.2d 1197 (1982), were appealed to the Pennsyl-

vania Supreme Court. The supreme court's decision of October 26, 1983, was in favor of the state legislators. *See* notes 3 and 9, *supra.*

was relegated to submission of an amicus brief. Defendants' argument lacks merit. Based on the past actions of defendants, any reasonable party in plaintiffs' position would be hesitant to rely solely on defendants in an action where defendants were the ones seeking implementation of the I/M program. The fact that plaintiffs were seeking to protect their rights under the consent decree in a forum different from the original forum is not important. As long as plaintiffs' activities were in pursuit of protecting their rights under the decree it didn't matter whether the time spent was in this court, in the library, or on a brief submitted in state court.

The request for .4 hours for review of the *Burd* case by Mr. Churchill will be granted.

The requested 5 hours for a trip to Harrisburg by Mr. Lanard for the case in which DVCCCA was amicus is denied as unnecessary.

A reasonable amount of time spent by Mr. Balter on this aspect of the case is 11.4 hours, the other hours claimed not sufficiently related to the litigation or inadequately explained.

The preparation of the amicus brief by Mr. Balter will be compensated at an hourly rate of $65.00 and Mr. Churchill's review of the *Burd* case will be compensated at an hourly rate of $25.00.

#### b) *EPA Regulatory Activity*

■ Plaintiffs, during the course of this litigation, participated in EPA hearings during which: 1) defendants requested that EPA modify the state implementation plan ("SIP") so that the I/M program would cover a smaller geographic area; and 2) proposals of cut-offs of EPA funding were discussed.

The activities which occurred due to the defendants' request for a modification of the I/M program were related to this litigation since an EPA modification of the I/M program would have affected plaintiffs' rights under the decree. For these activities plaintiffs will be compensated. How-

ever, participation in hearings concerning the possibility that the EPA would cut-off federal grants to Pennsylvania was activity which was not sufficiently related to this litigation since any such EPA decision would not have affected plaintiffs' rights under the decree. Therefore the hours spent on this latter activity will be denied. Based on the foregoing, the court will grant, as a reasonable number of hours, the 4 hours requested for Mr. Lanard's work. The court will also grant 6.8 hours as a reasonable number of hours for work performed by Mr. Balter in this phase.

Both Mr. Lanard and Mr. Balter will be compensated at a rate of $65.00 per hour, a rate reasonable for the activities involved.

#### PHASE IX

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| **a)** | | | | |
| Mr. Churchill | .4 | $25 | = | $ 10.00 |
| Mr. Balter | 11.4 | $65 | = | $ 741.00 |
| **b)** | | | | |
| Mr. Lanard | 4 | $65 | = | $ 260.00 |
| Mr. Balter | 6.8 | $65 | = | $ 442.00 |
| | | Phase IX Lodestar | ------ | $1,453.00 |

### (J) *Fee Petition*

■ Plaintiffs request a total of 101.8 hours for preparation of the fee petition, 88.3 hours requested for Mr. Balter's work and 13.5 hours for Mr. Lanard's work. Attorneys may be compensated for time spent in the preparation of a fee petition to the extent that the time was reasonably necessary for obtaining a reasonable fee award. *Prandini v. National Tea Co.*, 585 F.2d 47, 54 (3d Cir.1978).

A reasonable amount of time for Mr. Lanard's work on the petition is 10 hours.

■ Mr. Balter's request of 88.3 hours for work on the fee petition is excessive. Based on the time sheets submitted, it is evident that Mr. Balter has been preparing the fee petition throughout this litigation. Whether this activity was based on the hopeful expectation that the litigation was to cease at that point in time or based on some other reason is unimportant. What is important is that Mr. Balter continually prepared or updated the fee petition

throughout the various phases of this litigation and then used an additional 40 hours at the end of the litigation for the same activity. This court finds that 40 hours is a reasonable amount of time necessary for Mr. Balter to prepare a fee petition in this case based on the fact that the petition is comprised of, for the most part, contemporaneous time records and based on the fact that Mr. Balter continually updated the fee petition.

Plaintiffs have also submitted a supplemental memorandum in which they request hours for attendance at a hearing concerning the fee petition as well as for hours spent in answering interrogatories submitted by the defendants. Since these requested hours include hours spent by attorneys, other than Mr. Balter, whose presence was unnecessary at the fee petition hearing and since the court determines that plaintiffs have already been adequately compensated for activity constituting fee petition preparation, the court will only grant as compensable time the 2 additional hours spent by Mr. Balter at the hearing. A reasonable compensable hourly rate for the work performed on the fee petition is $65.00.

FEE PETITION

|  | Compensable Hours | Hourly Rate |  |  |
|---|---|---|---|---|
| Mr. Lanard | 10 | $65 | = | $ 650.00 |
| Mr. Balter | 42 | $65 | = | $2,730.00 |
|  |  |  |  | $3,380.00 |

## V. MULTIPLIER

After determining the lodestar amount of the fee, an adjustment may be made. *Lindy I*, 487 F.2d 161 (3d Cir.1973); *Lindy II*, 540 F.2d 102 (3d Cir.1976); *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978). The adjustment may be based on the contingent nature of the case, the quality of the work performed and the results obtained. *Hensley v. Eckerhart*, —— U.S. ——, ——, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983); *Lindy I* at 169; *Lindy II* at 117. Plaintiffs have requested that this court use a multiplier of 2 for Phases V and VI and a multiplier of 3 for Phase VII. De-

fendants argue that if any fees are granted to plaintiffs no multiplier should be used.

The contingent nature of plaintiffs' success has been apparent throughout this litigation. Plaintiffs entered the litigation against the U.S. Government and the Commonwealth of Pennsylvania. The case involved new and novel issues, the resolution of which had little or no precedent. Commencing in Phase IV and continuing up until the present, plaintiffs have had to defend their rights under the consent decree due to numerous attempts by defendants and others to overturn or circumvent this court's Orders.

The quality of plaintiffs' work was superior in the phase in which this court imposed a civil contempt sanction on defendants (Phase V). Even this court expressed its concern for the avoidance of undue interference with essential elements of state sovereignty in its decision to countermand the decision of the state legislature not to expend funds for the I/M program. *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 533 F.Supp. 869 (E.D.Pa.), *aff'd* 678 F.2d 470, *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). Plaintiffs' work in this phase helped not only this court but also the court of appeals in resolving this difficult issue. An increase based on the quality of work performed which culminated in an outstanding result is fully justified. *See Ursic v. Bethelehem Mines*, 719 F.2d 670, 674 (3d Cir.1983).

Accordingly, based on the foregoing, a multiplier of 2 will be applied to the awarded fees of Phases IV and VII, the phases which this court determines were the ones, in addition to Phase V, where likelihood of success was least. A multiplier of 4 will be applied to the awarded fees of Phase V, such phase being one of the phases where eventual implementation of the I/M program seemed least likely and the phase where plaintiffs' work was superior.

## VI. COSTS

The Clean Air Act provides, in pertinent part, that "The court ... may award costs of litigation (including ... expert witness

fees). ..." 42 U.S.C. § 7604(d). Items which may be taxed as costs are listed in 28 U.S.C. § 1920:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Plaintiffs request a total of $10,664.78 in costs, apportioned as follows: court reporters—$1,229.03; printing—$8,903.75; and expert witness fee—$552.00. Defendants contend that certain items included by plaintiffs' request are not taxable because they are not provided for in section 1920, not documented, not related to claims where plaintiffs prevailed or not reasonably incurred.

■ As stated previously in this Opinion, the fact that a plaintiff has not prevailed on every issue or claim presented to this court will not prevent recovery where there has been substantial success in achieving the result sought. *See Hensley,* — U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40; *Natural Resources Defense Council v. Envir. Protection Agency,* 484 F.2d 1331 (1st Cir.1973). However, with respect to costs not specifically authorized by statute, this court should exercise its discretion sparingly. *Walker v. Robbins Hose Co. No. 1, Inc.,* 622 F.2d 692, 694 (3d Cir.1980).

■ Plaintiff has requested $1,229.03 for court reporter costs incurred for the depositions of the designee of the U.S. Secretary of Transportation and of employees of Penn DOT. These depositions were taken in preparation for the court hearing which was convened to determine whether seven highway projects were to be certified as exceptions to the court's contempt Order (Phase VII). Such costs are taxable since they were reasonable and necessary to the case. *See State of Illinois v. Sangamo Const. Co.,* 657 F.2d 855 (7th Cir.1981); *Hugney v. Consolidation Coal Co.,* 59 F.R.D. 258 (W.D.Pa.1978).

■ Plaintiffs seek an award in the sum of $552.00 for the fee of an expert. Mr. Robert Morris, an expert in transportation planning, assisted plaintiffs at the above mentioned depositions. Mr. Morris never testified before this court. Expert witness fees not provided for by statute may be taxed as costs when the expert's testimony was helpful to the court and played an important role in resolving the issues in the case. *Roberts v. S.S. Kyriakoula D. Lemos,* 651 F.2d 201 (3d Cir.1981); *Commonwealth of Pennsylvania v. O'Neill,* 431 F.Supp. 700 (E.D.Pa.1977), *aff'd mem.,* 573 F.2d 1301 (3d Cir.1978). Ordinarily, no fees may be allowed for witnesses who do not testify at trial. *Wehr v. Burroughs Corp.,* 477 F.Supp. 1012 (E.D. .Pa.1979). Since Mr. Morris did not testify before this court and since this court is unable to determine whether Mr. Morris' expertise helped resolve any issue, the request for compensation of his fees will be denied.

Plaintiff has requested a sum of $3557.75 for reproduction costs of briefs to the United States Supreme Court. While the cost of the transcript of record submitted to the Supreme Court is a taxable item in the court below, the expense of printing briefs is not taxable. Sup.Ct.R. 50(.3). Accordingly, the request for reproduction costs of Supreme Court briefs will be denied.

Plaintiffs' request for the cost of printing copies used in this litigation is reasonable and the cost of such copies was a necessary expense in this litigation. Therefore, such request will be granted in the amount of $5,346.00.

Plaintiffs' request for $100.00 for their share of the cost of the transcript ordered by the court of appeals in *Delaware Valley*

*Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 674 F.2d 976 (3d Cir.1982) will be granted. Fed.R. App.P. 39(e).

**COST ALLOWED**

| | |
|---|---|
| Transcript Ordered by Third Circuit | $ 100.00 |
| Court Reporter Costs re: Depositions | $1,229.03 |
| Reproduction Costs | $5,346.00 |
| Total Allowed Costs -------------------- | $6,675.03 |

An appropriate Order will be entered.

**APPENDIX**

| | Lodestar | Multiplier | | |
|---|---|---|---|---|
| Phase I | $4,478.50 | 1 | = | $ 4,478.50 |
| Phase II | $1,722.50 | 1 | = | $ 1,722.50 |
| Phase III | $1,745.00 | 1 | = | $ 1,745.00 |
| Phase IV | $36,711.50 | 2 | = | $ 73,723.00 |
| Phase V | $27,372.50 | 4 | = | $109,490.00 |
| Phase VI | $1,820.00 | 1 | = | $ 1,820.00 |
| Phase VII | $5,370.50 | 2 | = | $ 10,741.00 |
| Phase VIII | $1,560.00 | 1 | = | $ 1,560.00 |
| Phase IX | $1,453.00 | 1 | = | $ 1,453.00 |
| | | | | $206,353.00 |

Fee Petition Preparation

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| Mr. Lanard | 10 | $65 | = | $ 650.00 |
| Mr. Balter | 42 | $65 | = | $2,730.00 |
| | | | | $ 3,380.00 |
| Total Attorney Fee Award | | | -- | $209,813.00 |
| Costs Awarded | | | ----------- | $ 6,675.03 |