Frank S. MEROLA and Frank J. Merola, Jr., Individually and t/d/b/a Merola's Arco, on their own behalves and on behalf of all others similarly situated, Appellants,

v.

ATLANTIC RICHFIELD COMPANY, a corporation, Appellee.

No. 74–1628.

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1975.

Decided April 29, 1975.

Thomas M. Kerr, Pittsburgh, Pa., for appellants.

Howard A. Specter, David R. Brown, Litman, Litman, Harris & Specter, P.A., Thomas M. Kerr, Pittsburgh, Pa., for appellants.

M. Richard Dunlap, David J. Armstrong, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This case is before us for the second time on the sole question of an appropriate award of attorneys' fees following the settlement of an antitrust action. The first appeal, 493 F.2d 292 (3rd Cir. 1974), resulted in remand of the case in order that the district court might reconsider its award of $5,000 plus expenses in light of this court's decision in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3rd Cir. 1973) [hereinafter *Lindy*]. After remand, the district court reaffirmed its award of $5,000 and this appeal followed.

### Factual Background

In a complaint filed October 29, 1971, plaintiffs, Frank S. Merola and Frank J. Merola, Jr. ("the Merolas") charged defendant, Atlantic Richfield ("Atlantic") with violation of the antitrust laws. The suit was filed in behalf of a class of all persons who within four years prior to

the filing of the complaint had operated service stations as company lessees in Atlantic's Pittsburgh district. The complaint charged that "by coercive measures including, but not limited to, threats of lease cancellation and/or non-renewal," Atlantic had regulated the hours of operation and retail prices of its lessees and had forced the lessees to participate in company promotions and to purchase tires, batteries and accessories from designated suppliers. In addition to treble damages, the Merolas sought injunctive relief against further coercion and an order requiring renewal of their lease.

The Merolas filed a Motion for Determination of Class Action contemporaneously with the filing of their complaint. Subsequent thereto, discovery directed toward the merits and the propriety of a class action was undertaken. However, prior to any determination of whether a proper class was present, two settlements were reached by the parties. The first pertained solely to the Merolas and related to claims asserted by them against Atlantic in addition to those within the scope of the complaint. The individual settlement involved the payment to the Merolas of $10,000 and required that they surrender their lease and never seek a new one.

For purposes of settlement, the district court recognized a settling class composed of all present and future Atlantic dealers in the Pittsburgh district.[1] Former lessees were not included in the settling class and their claims were ultimately incorporated in another lawsuit which is apparently still pending before the same district judge.

Under the terms of the class settlement approved by the district court on December 20, 1972, Atlantic agreed to alter its service station leasing policies for a period of 15 years. Atlantic's former practice had been to grant a one-year lease to a new lessee, followed by another one year lease and then by a three-year term (a 1–1–3 system). Under the settlement, Atlantic agreed to institute a 1–3–5 system subject always to its willingness to renew a lease at its expiration. Under the new system, a dealer's first lease would be for one year, his second for three years and all subsequent leases for five-year terms.

▮ Attorneys' fees were not the subject of negotiations incident to the class settlement. However, Atlantic has admitted the allegation of plaintiffs' counsel in their application for award of attorneys' fees that "[i]t was agreed that . . . the defendant would be liable for attorneys' fees, expenses and costs . . . [to] be determined by the Court. . . . " In the fee application, plaintiffs' attorneys sought an award of $250,000 based on the expenditure of 871 hours and on the assertion that the settlement had a minimum economic value of $5 million to members of the settling class.[2]

Because it was drafted prior to this court's decision in *Lindy*, the fee petition did not provide the district court with information required for determination of a reasonable attorneys' fee under the guidelines of that case. The 871 hours claimed were divided among eight named attorneys and a law clerk. However, no information was given concerning an appropriate hourly rate for each

---

1. At the time of the counsel fee hearing, 188 present dealers were members of the class. According to Atlantic's brief on this appeal, court records reveal that a final settling class of 174 remains after excluding those permitted by the district court to opt out of the settling class.

2. The fee petition here was unsworn and was not accompanied by an affidavit by plaintiffs' counsel. We expressed our dissatisfaction with such a procedure on the first appeal of

this case. 493 F.2d at 294, n. 7. Generally speaking, a desirable practice for handling applications for counsel fees would include the filing of a sworn petition, or a claim supported by an affidavit, setting forth detailed information in a format susceptible to the type of analysis specified in *Lindy*. At any hearing on the fee application, the petitioning attorneys would be available for examination by other interested parties who would also be able to present relevant information on the question of an appropriate fee.

of these individuals, even though the petition did claim a "productive value" of $57,450 for the time alone, apart from any benefit produced to the settling class.

At the fee hearing, the chief counsel for plaintiffs stated that 264.2 hours were spent by 5 named members of his firm subsequent to June 19, 1972, a date after which the parties agreed that all work was compensable under Atlantic's agreement to pay fees. He also stated his noncontingent hourly rate and that of one other lawyer involved in the case, and indicated his willingness to be examined by Atlantic on the matters concerning which he had given information to the court. The only sworn evidence offered by plaintiffs' counsel at any time with respect to the fee question was testimony by expert witnesses on the value of the settlement to the class. Atlantic did not accept counsel's offer of cross-examination but did challenge the assertion that 871 hours were spent on class action aspects of the litigation. On the ground that there was no benefit accruing from the settlement to the lessee dealers, Atlantic suggested that an appropriate fee would be no more than $5,000.

In a memorandum opinion filed July 11, 1973, the district judge concluded (1) that counsel had adequately established only that 264.2 hours were spent on class action aspects of the litigation; (2) that the plaintiffs' counsel had "failed to meet his burden of proving that the settlement produced any benefit whatsoever to the class"; and (3) that an award of attorneys' fees of $5,000 was appropriate under the circumstances. On appeal, this court affirmed the finding as to the hours spent, questioned the holding of "no benefit" and remanded the case for reconsideration in light of the criteria set forth in *Lindy* because the district court's opinion included "neither the specificity mandated by *Lindy* nor an analysis" of factors outlined in *Lindy* other than the total hours spent by plaintiffs' counsel. 493 F.2d at 298.

After remand, and according to plaintiffs' counsel, without notice to or comments from the parties, the district court filed a second memorandum opinion April 19, 1974. On the ground that there was "no conflict, except perhaps somewhere in the realm of nebulous semantics" between his approach and that of *Lindy* to the question of attorneys' fees, the district judge reaffirmed his award of $5,000. This was done apparently without affording the parties an opportunity to present further evidence and without making the specific findings required by the order of remand. On this occasion the district judge described the pecuniary and non-pecuniary benefit bestowed upon the class "to be far less than the amount sought by counsel," and concluded that "only in an unfettered outburst of unwarranted generosity could a value in excess of $5,000 be placed" upon the value of the attorneys' services.

### The Duty of the District Court on Remand: Application of Lindy

*Lindy* approached the award of attorneys' fees by requiring that initially an objective basis for evaluating attorneys' services be established by multiplying the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved. With this objective figure as a backdrop, *Lindy* injected flexibility into the fee-setting process by requiring that the value of the services be finally determined by consideration of at least two additional factors: (1) the contingent nature of the case, reflecting the likelihood that hours were invested and expenses incurred without assurance of compensation and (2) the quality of the work performed as evidenced by the work observed, the complexity of the issues and the recovery obtained. In settled cases, the second additional factor is reflected largely in the benefit produced. It permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested, or to reduce the objectively determined fee where the benefit produced does not warrant

awarding the full value of the time expended.

Plaintiffs' counsel contend that the district court abused its discretion by failing to follow the mandate of this court to apply a *Lindy* analysis after remand of this case. We are constrained to agree that the district court's treatment of the case did not satisfy the order for reconsideration. The absence from the court's first opinion of an adequate treatment of the factors deemed significant in *Lindy,* for which the case was remanded, was not rectified upon reconsideration.

█ In treating the case after remand, the district court failed to establish the groundwork necessary for an objective valuation of the attorneys' services. Although the total number of hours spent was reiterated by the district court in its second opinion, the court failed to determine by whom the time was spent and what was a reasonable hourly rate of compensation for each of the five attorneys who were involved in class aspects of the case, considering their status (partner, associate) and reputation.

Furthermore, the district court did not properly assess the contingent nature of the case as required by *Lindy.* Although the district court addressed contingency in its second opinion, the discussion there was aimed actually at the question of benefit produced by the attorneys' work. Since the district judge found the benefits conferred on the class to be insubstantial, he reasoned from the analogy of a contingent fee arrangement that the attorneys' fee should be minimal.

Although the district court was perhaps in a position to evaluate contingency and benefit without further proceedings after remand, it could not make adequate findings with respect to the hours spent and the rate of reasonable hourly compensation without the benefit of further evidence. Under these circumstances we conclude that the court abused its discretion in reiterating its award of $5,000 without conducting further proceedings necessary for a proper

application of the *Lindy* criteria. The receipt of further evidence will be necessary before *Lindy* can be applied to this case.

### Benefit Conferred

#### A. The District Court's Treatment

In both its opinions, on the basis of the evidence before it, the district court concluded that the benefits conferred by the settlement on the lessee class were nonexistent or at least insubstantial. On this and other matters, the court's second opinion relied on and was largely a reiteration of the findings and conclusions which the district judge made when he first determined that an award of $5,000 was appropriate. For this reason, we must treat both of the district court's opinions in reviewing the court's conclusion with respect to the benefit accruing to the class.

█ In its first opinion, the district court rejected the testimony of expert witnesses called by plaintiffs' counsel in an attempt to translate the class benefit into dollar terms. Those witnesses projected a class benefit of $8 million as the present value of the increased lease terms during the 15 years of the settlement. This figure was derived from evidence as to increased gallonage sold in three stations (not in the settling class) where there had been a lengthening of the tenure of the operator, either through purchase of the station by the operator or the acquisition of a longer lease term. In the district court's view, the experts failed to adequately consider factors other than longer tenure as accounting for increased gallonage. We agree with this conclusion.

█ The fact that we support the court's finding as to this aspect of the experts' testimony does not mean, however, that we agree that there was not a cognizable benefit arising from the settlement sufficient to justify an award of more than $5,000 in attorneys' fees. Attorneys' fees are awardable even though

the benefit conferred is purely nonpecuniary in nature. Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In our opinion, the benefit in this case is clear even though it may be difficult to quantify. We recognize fully the fact that in cases such as this the task of translating the benefit obtained into dollar terms is most difficult at best. *See, e. g.,* Moschetta v. Cross, 241 F.Supp. 347 (D.D.C.1964), *aff'd sub nom.* Bakery and Confectionery Workers Int'l v. Ratner, 122 U.S.App. D.C. 372, 354 F.2d 504 (D.C.Cir.1965). This difficulty does not, however, justify a niggardly award of attorneys' fees where a substantial benefit has been conferred. Mencher v. Sachs, 39 Del.Ch. 366, 164 A.2d 320 (S.Ct.1960); Berger v. Amana Society, 257 Iowa 956, 135 N.W.2d 618 (1965).

It appears that a basic underpinning of the district court's conclusion that only an inconsequential benefit was involved here was the finding in its first opinion that "there was no evidence that Atlantic ever pursued a policy of threatening dealers with non-renewal. . . . " The basis for such a conclusion is unclear. If by this statement the district court implied that a general company policy of coercion must be established before the limitation of opportunities for coercion can be considered a benefit to the service station dealers, we cannot agree. If, on the other hand, the court was simply stating that no evidence of coercion was available to it, we are unable to understand such an assertion in light of the deposition testimony of the Merolas. That testimony, which is part of the record on appeal, provides a classic picture of coercion involving threats of non-renewal in order to secure dealer compliance with company policies as to suppliers, promotions and price.[3]

The court apparently did not consider this evidence on the question of an appropriate fee, perhaps either because it was not formally introduced at the fee hearing or because the Merolas were not "present" dealers at the time of the approval of the class settlement. Atlantic contends that because the Merolas had relinquished their lease prior to the class settlement and were therefore not members of the settling class, any evidence with respect to threats toward them was irrelevant to the question of the benefit of the settlement to other dealers.[4]

■ Even though the Merolas entered into a separate settlement with Atlantic of their additional claims, we perceive no reason in law or logic why their testimony could not be considered on the question of class benefit from the settlement. They were dealers in Atlantic's Pittsburgh district during the time of the activities charged in the complaint and hence their experience was certainly relevant to the question of Atlantic's tactics toward its lessee dealers. We do not see how the Merolas could have been prevented by Atlantic from testifying at trial should the class action have proceeded after their individual settlement. Similarly, their depositions concerning Atlantic's practices were competent for consideration on the question of class benefit. Any difficulty arising from the fact that the depositions were not formally introduced at the fee hearing may be resolved after remand by permitting plaintiffs' counsel to offer them into evidence at the further evidentiary hearing

---

**3.** For example, Frank S. Merola stated in his deposition that he was told by an Atlantic sales representative to raise his retail price by two cents and the agent advised that "[i]f I didn't go along with what he said . . . when it came lease time, he probably would have canceled me." (A. 66a). Frank S. Merola stated that when he told another Atlantic representative that the Merolas wished to discontinue giving trading stamps, the agent replied "They expect you to give stamps. And you will windup without a lease." (A. 107a).

**4.** Atlantic's only evidence respecting the alleged coercion came from the testimony at the fee hearing of its then current Pittsburgh district manager, Fred P. Rullo, Jr., who had no knowledge at all respecting Atlantic's activities in the 1967–71 period covered by the complaint.

which we have found to be necessary in this case.[5]

In determining that the Merolas' depositions were appropriate for consideration by the district court on the question of benefit, we of course express no opinion concerning the truth of the allegations of plaintiffs' complaint. We merely hold that such evidence may be relied on by plaintiffs' counsel in meeting their burden of establishing benefit to the settling class as a result of their efforts. We view that burden to extend here to establishing that the plaintiffs had presented a sufficiently meritorious claim of coercion that it can be said that a settlement which limits opportunities for such coercion may be considered beneficial to the lessee dealers. Proof necessary to carry such a burden may involve the presentation of some of the evidence that would have been used on the merits had the case proceeded to trial. Countervailing evidence on the merits of the complaint may be presented by Atlantic if, and to the extent that, the district court determines receipt of such evidence to be appropriate under the circumstances. We emphasize, however, that treatment of this aspect of the class benefit should not transform the fee hearing into a trial of the action, and thereby dissipate the advantages of settlement to the parties.

In addition to finding the absence of a policy of threats by Atlantic, the district judge bolstered his conclusion of insubstantial benefit by finding that Atlantic had in fact renewed any dealer in the Pittsburgh district who was even marginally satisfactory. Under these circumstances, the district judge felt that three one-year leases provided as much security as one three-year lease under the settlement.

Whatever may have been Atlantic's policy respecting renewal, it seems clear that a three-year lease provides more security than three one-year leases for the simple fact that the possibility of non-renewal is removed during the longer term of the lease. Furthermore, the low frequency of non-renewals testified to by Atlantic's district manager does not negate the existence of the coercive practices alleged in the complaint. On the contrary, it is possible that Atlantic's willingness to renew almost all its lessees may only testify to the success of the program of coercion described by the Merolas. Certainly security bought through compliance with such a campaign is not the equivalent of the security lawfully obtained through a longer lease period.

B. Indicia of Benefit

Although plaintiffs' experts may have failed in their effort to quantify the benefits accruing from the settlement, their testimony did establish certain benefits accruing from the settlement that merited consideration by the district court. As the witnesses testified, the increased lease terms under the settlement bring a stability and security to the dealer that is of substantial worth. At a minimum, this stability produces, in our opinion, a benefit not lightly dismissed in the greater sense of personal security flowing to dealers holding longer leaseholds. Such increased terms give the assurance that the dealer will be able to continue in operation for a substantial period without the possibility of termination for reasons beyond his control and thereby remove the uncertainty inherent in a yearly lease arrangement.

More tangibly, the stability offered by a longer lease will also be reflected, as one witness pointed out, in greatly increased opportunities for financing open to one holding a three or five-year lease instead of a series of one-year leases, however great the likelihood of renewal. The opportunity to obtain financing will

---

5. The lack of clarity even at this time of what evidence was considered by the district court on the fee question points up the desirability of the court's stating at the inception of the fee proceedings what it will consider to be the record for purposes of determining a reasonable attorneys' fee.

enable the dealer to act upon the incentive for investment which the experts identified as another benefit accruing from the settlement. The investments in more or better equipment with which to serve the dealer's customers may, in turn, be reflected in increased profitability. An increase in business may also be the product of the freedom of a dealer entering a three or five-year term from Atlantic's alleged coercive activities. The absence of company pressures will permit the dealer to structure his methods of operation and inventories to suit both his needs and those of his customers without the fear of immediate reprisal from the company.

We are of the opinion that though difficult to evaluate in monetary terms, economic benefits such as these are significant, particulary when multiplied by the some 174 members of the class. We conclude, therefore, that the district court erred in holding that the benefits from the settlement were negligible.[6] However, the difficult task is not in finding benefit but in determining how such intangible results are to be treated in a *Lindy* analysis which recognizes that the objective value of legal services rendered may be adjusted upward or downward to reflect the economic benefit obtained as a result of those services.

■ We think that in cases such as this where the benefit is in non-monetary form, the district court must bring an informed economic judgment to bear in assessing its value. If probative evidence of the monetary value of such a benefit is available, it should of course be used. If the benefit is not susceptible of being rationally reduced to monetary terms, the court must compare the value of the legal services and the benefit obtained on the basis of its best economic judgment. To the extent possible, the court should articulate the factors influencing its judgment either to award the objective value of the services as adjust-

ed to reflect contingency or to adjust that figure to reflect the worth of the benefit which the court has identified and evaluated.

## C. Minimum Fee

■ Because of the protracted nature of the litigation with regard to attorneys' fees in this case, we deem it appropriate to express our views as to the bearing of the benefit conferred by this settlement on the question of a reasonable attorneys' fee. We note that the fee application of plaintiffs' counsel alleged that the value on an hourly basis of the 871 hours for which compensation was sought was $57,400, or an average of approximately $65.00 per hour for all attorneys involved. At this hourly rate, the 264.2 hours found to be compensable would have an objective value of slightly over $17,000. Assuming the validity of Atlantic's assertion that the final class membership included 174 dealers, an award of only the hourly value would recognize a benefit to each dealer from the settlement of less than $100.00. It is true, of course, that this figure may be inaccurate either because the district court may assign different hourly rates to the various attorneys than did those attorneys themselves, or because the mix of attorneys involved in the 871 hours may differ from those who worked the compensable 264.2 hours. Even recognizing the roughness of the estimate, however, the figure is persuasive that compensation of plaintiffs' attorneys for at least the objective value of their services would not be unreasonable, since, as stated in the opinion of the district court, the quality of the work of plaintiffs' counsel is "undisputed."

Although we cannot definitely ascertain the amount, we conclude that the benefits of the settlement which have been identified to this point justify an award of at least the value of the attorneys' services computed on the basis of a reasonable hourly rate for the time ex-

---

**6.** We emphasize that in so concluding we do not rely on the testimony as to increased gallonage resulting from longer leaseholds offered by plaintiffs' counsel in an effort to express the benefits of the settlement in dollar terms.

pended. Therefore, in the exercise of our power to set a minimum fee, Monaghan v. Hill, 140 F.2d 31 (9th Cir. 1944); *cf.* Powell v. Pennsylvania R.R. Co., 267 F.2d 241 (3rd Cir. 1959), we deem it appropriate to indicate that we will expect the district court to award a fee in this case not less than the objective value of the legal services as calculated after remand. That figure may, of course, be adjusted by the district court to reflect that court's assessment, after the receipt of further evidence, of (1) the contingency of the litigation and (2) the value of the benefit conferred.

While we recognize the difficulty of the problem, we are not convinced that some economic evidence is not available in this case to assist the district judge in translating the value of longer lease periods into more concrete terms. Because the case must be remanded for other purposes and because the parties have never had an opportunity to approach the fee question with the standards of *Lindy* in view, we feel that the district court should permit both sides an opportunity after remand to adduce further evidence to assist it in evaluating the benefit conferred by the class settlement.

*Awards for Attorneys' Fees for Appellate Services*

■ Plaintiffs' counsel contend that the district court also erred in failing to hold a hearing after remand because they were thereby deprived of an opportunity to present evidence of the attorneys' fees awardable as a result of prosecution of the first appeal in this case.

Counsel have not suggested any basis for the award of attorneys' fees in this case other than the agreement between the parties at the time of settlement. The question presented, therefore, is one of the proper construction of a contract that is neutral on its face with respect to attorneys' fees for appellate aspects of the litigation.

We are strongly of the opinion that this is a matter which should be addressed to the district court in the first instance. We deem it inappropriate to treat this question without any evidence having been presented on the scope of the contract and without the benefit of the findings and opinion of the district judge on this question. An opportunity to present evidence regarding the proper construction of the agreement will be available at the evidentiary hearing held after remand.[7]

The judgment of the district court will be vacated and the matter remanded for further proceedings consistent with this opinion.

---

**7.** We are aware that after remand in *Lindy*, the district court awarded attorneys' fees for the time expended in prosecution of the appeal in this court. 382 F.Supp. 999, 1012 (E.D.Pa. 1974). A second appeal in that case has been docketed. No. 74–2189, 3rd Cir., Nov. 25, 1974. We express no opinion on the correctness of that holding nor on whether the rationale supporting the award of appellate expenses, if approved on appeal, would be applicable to this case.