Angela C. CRAGEN

v.

Steve BARNHILL, individually, d/b/a Barnhill's Country Buffett, and Loyd Sims, Inc., a Florida corporation, d/b/a Barnhill's Country Buffet.

Civ. A. No. 92–30447/LAC.

United States District Court,
N.D. Florida,
Pensacola Division.

July 29, 1994.

Charles V. Peppler, Pensacola, FL, for plaintiff.

Thomas G. Reed, III, Pensacola, FL, for defendant.

### ORDER

COLLIER, District Judge.

Plaintiff has moved for an award of attorneys' fees under 42 U.S.C. § 1988. The motion includes documentary support. Defendant objects to the fee amount requested by the plaintiff and suggests it should be reduced by 75% based on the limited degree of success achieved by plaintiff at trial.

Title 42, United States Code, Section 1988 authorizes an award of attorneys' fees to the prevailing party in a civil rights action. 42 U.S.C. § 1988. A prevailing party is defined as one who " '... succeed[s] on any significant issue in litigation which achieves some benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting, *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). The prevailing party, however, may recover only a "reasonable" fee. 42 U.S.C. § 1988; *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air*, 478 U.S. 546, 562, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986); *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

Appellate courts have struggled to provide district courts with objective guidelines for determining the reasonableness of a fee award. *Delaware Valley Citizens' Council*, 478 U.S. at 562, 106 S.Ct. at 3096.[1] Initially, most courts followed the Fifth Circuit's decision in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974), wherein the court settled on twelve factors it deemed appropriate to a trial court's determination of the propriety of a fee award.[2] Although a step in the right direction, the *Johnson* deci-

sion nonetheless proved unworkable in practice, as much of the analysis was subjective and offered little in the way of guidance, placing almost unfettered discretion in the hands of the trial courts and producing disparate results. *See Delaware Valley Citizens' Council*, 478 U.S. at 562–63, 106 S.Ct. at 3096–97; *Copeland v. Marshall*, 641 F.2d 880, 890 (D.C.Cir.1980).

In an effort to streamline the analysis and lend some uniformity to trial court decisions, the Third Circuit adopted what has become known as the "lodestar approach." This approach consisted of a two-step analysis involving calculation of the lodestar by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate and subsequent adjustment to this figure based on " '(1) the contingent nature of the case, reflecting the likelihood that hours were invested and expenses incurred without assurance of compensation; and (2) the quality of the work performed as evidenced by the work observed, the complexity of the issues and the recovery obtained.' " *Id.* 478 U.S. at 563, 106 S.Ct. at 3097 (quoting, *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir.1975); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir.1976) (Lindy I)).

Unsatisfied that the Third Circuit's approach would eliminate completely the problems associated with the *Johnson* analysis; namely the potential for arbitrary and inconsistent fee awards, the Supreme Court fashioned a "hybrid" version of these two approaches. *See Delaware Valley Citizens' Council*, 478 U.S. at 564, 106 S.Ct. at 3097. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court left intact the initial calculation

---

1. Although *Delaware Valley Citizens' Council* did not involve a request for fees under § 1988, the Supreme Court in *Hensley* noted that the lodestar analysis is applicable to all cases where Congress had authorized an award of fees to a "prevailing party." *See Hensley*, 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7.

2. The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the " 'undesirability' " of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Delaware Valley Citizens' Council*, 478 U.S. at 562 n. 7, 106 S.Ct. at 3097 n. 7.

of the lodestar figure as suggested by the Third Circuit. However, the court broadened the second step of Third Circuit's approach, that which involves adjustment of the lodestar figure, by including two additional considerations which ultimately bear on the question of results obtained: (1) whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded; and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making the award. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939.[3]

The Supreme Court addressed the question of the reasonableness of a fee award again in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). There, the court reconfirmed that the determination of a reasonable fee must begin with calculation of the lodestar. *Id.* at 888, 104 S.Ct. at 1543. The court modified the approach, however, in another attempt to establish objective standards for courts to follow. In doing so, the court expanded on its suggestion in *Hensley* that many of the *Johnson* factors are subsumed within the district court's calculation of the lodestar and eliminated the factors of " 'novelty and complexity of the issues,' " " 'the special skill and experience of counsel,' " " 'the quality of representation,' " and " 'the results obtained' from the litigation" from a district court's analysis of whether to make an upward adjustment to the lodestar. *Id.* (quoting, *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–50). The court also instructed district courts to reserve en-

hancements to the lodestar for " 'rare' " and " 'exceptional cases.' " *Id.*[4]

In accordance with the Supreme Court's instruction, the Eleventh Circuit has held that the determination of a reasonable fee must begin with calculation of the lodestar, which is performed by multiplying the hours reasonably expended by counsel on the litigation by a reasonable hourly rate. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). The court defines a reasonable hourly rate as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.*

The fee applicant bears the burden to prove the reasonableness of his fee request. *Id.*; *Loranger v. Stierheim*, 10 F.3d 776 (11th Cir.1994). The affidavit of the attorney who performed the work is not sufficient to meet this burden, and because courts are concerned with rates actually billed and paid in similar actions, testimony that a given fee is reasonable is likewise insufficient, though the applicant may submit evidence of rates either through direct evidence of fees charged by other lawyers under similar circumstances or by opinion evidence.[5] If an applicant relies on opinion testimony to establish a reasonable rate, courts are instructed to weigh the testimony by the amount of detail and specificity "contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id.*

---

**3.** *Hensley* should not be read to preclude consideration of the *Johnson* factors. In fact, *Hensley* recognizes that some of the *Johnson* factors may very well come into play under a district court's evaluation of the results obtained. The court cautioned, however, that many of the *Johnson* factors necessarily are subsumed within the initial calculation of the lodestar figure; i.e. hours reasonably expended multiplied by reasonable hourly rate. *Hensley*, 461 U.S. 434 n. 9, 103 S.Ct. at 1940 n. 9.

**4.** Addressing the initial calculation of the lodestar, the court cautioned that a district court may not employ mere guesswork to arrive at the figure and that it must be more than an "initial approximation of the final award to be made."

*Delaware Valley Citizens' Council*, 478 U.S. at 565, 106 S.Ct. at 3098. Further, the court recognized that " '[w]hen ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee.' " *Id.* (quoting, *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548).

**5.** In discussing the issue of a reasonable hourly rate, the court found that some of the *Johnson* factors might still be useful "to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered to the court." *Norman*, 836 F.2d at 1299–1300.

The Eleventh Circuit recognizes skill as the "ultimate determinate of compensation level," reasoning that "reputation and experience are usually only proxies for skill." *Id.* at 1300. The court lists four factors a district court may consider in determining an attorney's skill level. First, skill may be measured by evaluating the degree of prudence and practicality exhibited by counsel at the beginning of the case, especially with regards to efforts to reach a speedy and just resolution of the case, with or without the necessity of litigation. *Id.* Second, skill may manifest itself through arduous preparation and efficient organization, particularly if the case goes to trial. *Id.* at 1300–01. Next, an attorney who, at the time of hiring, has a sharp command of trial practice and a sound understanding of the substantive law governing the case, such that his time may be spent exploring the finer points raised by the issues, should be compensated at a higher rate of pay than one who has to educate himself just to gain a general, working knowledge of trial practice and the law, although both attorneys may ultimately offer effective representation. *Id.* at 1301. The court considers persuasiveness the final attribute of legal skill, recognizing however that persuasiveness is most important in the "close question" cases and that in ordinary cases, the outcome is controlled by both the objective circumstances of the case and good advocacy. The court defines a good advocate as one who advances his client's positions in a clear and compelling manner. *Id.*

In *Norman*, the court advised that there generally are no blueprints for the prevailing market rate with which to arrive at a figure for an attorney's services in a given case. The court suggests that "[i]nstead, the best information available to the court is usually a wide range of fees set by the market place, with the variants best explained by reference to an attorneys demonstrated skill." *Id.* The court further instructed that

> [i]t is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar, remembering that the highest market rates are not theoretical rates for the perfect lawyer and

that the lowest market rates are being earned not by imbeciles but by men and women who are proud to say they are attorneys, who are good enough to earn a livelihood from the profession, and who are at least well enough qualified to be admitted to the bar.

*Id.*

After fashioning a reasonable hourly rate for an attorney's services, the district court must determine the number of hours reasonably spent on the litigation. Following the Supreme Court's directive in *Hensley* that in making this determination district courts should not consider "excessive, redundant or otherwise unnecessary" hours, [*Id.* (quoting, *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40) ], the *Norman* court stated that fee applicants should be held to a standard of good "billing judgment", [*Id.* (quoting, *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941) ]; that is, they should not claim hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel." Id.* The decision of whether certain hours are excessive or unreasonable is left to the discretion of the district court; however, the court must be "reasonably precise" in its reasoning of why certain hours should be excluded. *Id.; see Loranger*, 10 F.3d at 781.

As previously noted, the inquiry does not end with calculation of the lodestar. Once the court arrives at a reasonable lodestar figure, it then must decide whether the figure requires adjustment for results obtained. *Id.* at 1302. The lodestar may be enhanced ". . . only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.' " *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549 (quoting, *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940). As previously explained, the *Blum* court precluded an enhancement of the lodestar for novelty or complexity of the issues as well as for results obtained in a given case, reasoning that these factors are subsumed within other factors used to determine the reason-

ableness of a hourly rate, such as the skill of counsel.[6] *Id.* 465 U.S. at 899–900, 104 S.Ct. at 1549–50.

A reduction in the lodestar may be warranted in cases where a plaintiff technically fits the definition of a "prevailing party" although in reality he achieved only partial or limited success in relation to his complaint. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. In such cases, the factor of "results obtained" is crucial. *Id.*[7] In assessing the factor of results obtained under these circumstances, it is incumbent on the district court to determine whether plaintiff's claims for relief "involve a common core of facts" or are "based on related legal theories," or rather if they are unrelated both factually and legally. *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1940; *see Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 (11th Cir.1987) (quoting, *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940). If the latter is the case, then the court may not award any fees for hours spent on unsuccessful claims, as "an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Id.* (quoting, *Davis v. County of Los Angeles,* 8 EPD at 5049). If, however, the claims are related, then compensation should be directed not toward successful versus unsuccessful claims but instead toward "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* 461 U.S. at 435, 103 S.Ct. at 1940[8]; *see Norman,* 836 F.2d at 1302. In such cases, a claim-by-claim analysis is inappropriate, as counsel will have spent most of his time on the litigation as a whole. *Id.* Courts should be mindful as well that "'a

mathematical approach comparing the total number of issues in the case with those actually prevailed upon'" is equally inappropriate. *Hensley,* 461 U.S. at 435–36 n. 11, 103 S.Ct. at 1940 n. 11; *Norman,* 836 F.2d at 1302 (explaining that "[i]t is improper to make the reduction based on a simple ratio of successful issues to issues raised").

The district court has wide discretion in making the determination of whether to reduce the award. Ultimately, the court may elect to reduce based either on a rejection of specific hours devoted to unsuccessful claims, or instead on the limited success achieved, in which case an overall percentage reduction would be appropriate.[9] *Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941; *Norman,* 836 F.2d at 1302. In either case, the court must exercise equitable judgment. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

It is with these principles in mind that the Court now turns to the particular facts of this case. Plaintiff brought suit against both Steve Barnhill and Loyd Sims, Inc. under Title VII, alleging discrimination in employment based on pregnancy. She requested injunctive relief as well as compensatory and punitive damages.

## A. Calculation of the Lodestar

### 1. Reasonable Hourly Rate

■ Plaintiff's counsel requests compensation for himself at an hourly rate of $125.00 and for another attorney in his office who assisted in the case at $150.00 per hour. Additionally, he requests compensation at the hourly rate of $40.00 for legal assistants'

---

**6.** *Norman* adds two other factors to the analysis of whether to enhance the lodestar: (1) whether the fee arrangement was contingent, and (2) whether there was a delay in the receipt of payment by counsel for the prevailing party. *See Norman,* 836 F.2d at 1302.

**7.** The *Blum* decision addresses only the impropriety of enhancing the lodestar to reflect results obtained. The reasoning underlying this decision does not apply with equal force to a district court's consideration of a reduction in the lodestar. In any event, *Norman* and *Popham* discuss the possibility for reduction in the lodestar to reflect results obtained.

**8.** *Hensley* considers the degree of success achieved as the most critical factor in the analysis. *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941.

**9.** The court in *Loranger* expressed disapproval of the suggestion in *Norman* that when a court rejects certain hours it must provide an hour-by-hour explanation, identifying precisely which hours were rejected and why. The court reasoned that such a rule is impractical in cases where the district court is faced with a voluminous fee application. *See Loranger,* 10 F.3d at 783 n. 9. *Loranger* apparently left open the question of whether the hour-by-hour rule might still be required in cases such as this where the request is relatively insubstantial, however.

services. In support of his request, counsel has submitted three affidavits, his own, one from the other attorney involved in the litigation, John Barry Kelly, II, and one from a local attorney unaffiliated with plaintiff's office, J. Dixon Bridgers, III, each attesting to the reasonableness of the rates requested.

■ An affidavit from the attorney who performed the services for which he seeks compensation is insufficient, standing alone, to establish the reasonableness of the rate requested. *Norman*, 836 F.2d at 1299. Moreover, examination of the expert affidavit of Mr. Bridgers adds little to the determination. Mr. Bridgers' affidavit, like counsel's and Mr. Kelly's, does not "speak to rates actually billed and paid in similar lawsuits." *See id.* For this reason, the Court must consider it opinion evidence which must be weighed in terms of its detail "on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *See id.*

In his affidavit, Mr. Bridgers states he has practiced in the relevant market area for seventeen years, formerly with a large statewide law firm and now as the principle partner of a local firm, currently handling labor and employment cases as part of his practice. Although the affidavit lists three labor/employment law cases handled by Mr. Bridgers, it does not reflect the fee Mr. Bridgers himself charged in these cases nor that which he would command under similar circumstances. The affidavit, however, does give Mr. Bridgers' opinion of the range of prevailing market rates for the type of services performed in this case. Based on his experience, Mr. Bridgers suggests that the range is $100.00–$150.00 per hour, and concludes, without more, that an hourly rate of $125.00 for plaintiff's counsel, $150.00 for Mr. Kelly, and $40.00 for the legal assistants is reasonable.[10]

Based on the affidavit's lack of detail and specificity as to other attorneys with similar skill, experience and reputation to that possessed by plaintiff's counsel and Mr. Kelly, whom the affiant knows to charge similar rates for services performed in similar lawsuits, the Court affords little weight to the affiant's conclusion of reasonableness as to the *specific* rates requested in this case. This sort of detail is mandatory under the lodestar approach. *Norman*, at 1304–05. Nonetheless, based on its own knowledge and experience,[11] the Court agrees that the *range* of prevailing hourly market rates "for lawyers similar to [plaintiff's] counsel having similar client relationships and similar types of issues" is $100.00—$150.00. *See Norman*, 836 F.2d at 1305.

■ When faced with a range in prevailing market rates, district courts should determine the prevailing market rate based on an evaluation of the skill exhibited by the fee applicant. *Id.* at 1300. Preferably, the parties should "provide the court with a range of market rates for lawyers of different skill levels (perhaps as measured by quality and quantity of experience) involved in similar cases with similar clients, so that the court may interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar." *Id.* Absent this evidence, courts are free to make an independent judgment based on their own experience and knowledge concerning the rates charged by lawyers of *similar skill in similar* lawsuits with similar clients in the same market area. *See id.* at 1303.

Upon independent examination of the four factors recognized in *Norman* as synonymous with legal skill, the Court concludes that a reasonable hourly rate for plaintiff's counsel for the services performed in this case is $115.00.[12] For the most part, Mr. Peppler exhibited sufficient skill in the organization and preparation of plaintiff's case.

---

10. Mr. Bridgers' affidavit also includes the opinion that the total number of hours expended on the litigation was reasonable.

11. *See Norman*, 836 F.2d at 1303.

12. With respect to counsel's skill in the area of case assessment, the record reveals that prior to

trial, Mr. Kelly, not Mr. Peppler, managed the case. However, because Mr. Peppler actually "tried" the case, he probably should bear at least some of the responsibility for "the decisions on theories to be included and parties to be sued." *See Norman*, at 1300. The imprudence of these decisions is discussed more fully below.

The Court notes there were no discovery problems, at least none for which court intervention was necessary. The Court, however, would point out that the parties could not agree on a statement of the case to be read to the jury during voir dire and at the beginning of trial.[13] Moreover, the Court notes that counsel was required to twice supplement his fee application.

Regarding counsel's knowledge of trial practice and the substantive law governing this action, the Court recognizes counsel's experience as trial attorney. Additionally, the Court is cognizant of the number of employment discrimination cases handled by counsel's law firm. It is probably accurate to state that counsel's firm handles numerous plaintiff employment law cases in this locality. Accordingly, this factor weighs in favor of the requested hourly rate.

Based on the verdict in this case, the Court must conclude that the jury considered counsel persuasive. This was one of those "close" cases referred to in *Norman,* and frankly, based on the evidence, the Court was somewhat surprised by the verdict. This is not to say, however, that there was insufficient evidence upon which to find discrimination, only that the case sat on the fence, so to speak.

Based on its knowledge that attorneys of similar skill, experience, and reputation as that possessed by plaintiff's counsel charge $100.00—$135.00 for work in similar lawsuits with similar clients, the Court makes an independent judgment that $115.00 is a reasonable hourly fee for plaintiff's counsel for his services in this case, based on the skill exhibited.[14]

■ The matter of a reasonable hourly fee for plaintiff's partner in this case, Mr. Kelly, presents a more difficult question. As was the case with plaintiff's counsel, the expert affidavit does not allow for a meaningful comparison of rates within that established as a reasonable *range* in prevailing market rates. Moreover, plaintiff's expert considers $150.00 per hour to be the highest an attorney in this market area could charge and still be within reasonable bounds. Based on counsel's failure to prove that $150.00 is the prevailing market rate for attorneys of similar skill, experience, and reputation in similar lawsuits with similar clients, the Court again must rely on its own knowledge of the prevailing hourly market rate for attorneys of Mr. Kelly's caliber, tempering this judgment by the measure of skill demonstrated by him in this case.[15]

In terms of case assessment, Mr. Kelly was the attorney of record during the initial stages of this case; he filed both the complaint and the amended complaint. Mr. Kelly also was in charge of this case at the time the Court was led to believe settlement was imminent, as well as during mediation. Although the Court appreciates the parties' efforts toward mediation, the Court recognizes mediation was attempted only upon order of the Court.[16]

More importantly though are counsel's decisions to sue the individual defendant and to pursue punitive damages. Both of these decisions demonstrate that Mr. Kelly did not approach this case with a mind toward effective case assessment. There was very little evidence to support the claim against the Steve Barnhill individually and absolutely no evidence to support a claim for punitive damages. In the Court's view, these were poor tactical decisions which did very little "to advance [his] client's cause more quickly and effectively than the sustained and methodical

---

13. The Court never ceases to be amazed at parties' inability to mutually agree on this, as it is intended simply as a general, *objective* statement of the case to be tried.

14. The Court would refer again to the directive in *Norman* that "[i]t is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar,...." *Norman,* 836 F.2d at 1301.

15. Although Mr. Kelly did not appear physically before the Court in any of the proceedings in this case, he has so appeared before the Court on behalf of other plaintiffs in similar employment-related actions.

16. Based on the evidence adduced at trial, the Court is of the opinion that mediation should have resolved the dispute.

trench warfare of the classic litigation model." *Norman,* at 1300. Relying on its own knowledge that attorneys of similar skill, experience and reputation to that of Mr. Kelly would charge a fee of $130.00—$150.00 for a similar lawsuit with a similar client, the Court makes an independent judgment that $130.00 is a reasonable hourly rate for Mr. Kelly's services based on the less than skillful case assessment exhibited by him in this case.[17]

Regarding the $40.00 per hour fee for work performed by legal assistants on this case, the Court concludes this reflects the prevailing market rate for these types of services.[18]

### 2. *Hours Reasonably Expended*

■ Counsel for plaintiff has requested compensation for 101.00 hours, comprised of 79.00 hours of his own time, 16.10 of Mr. Kelly's, and 6.20 of legal assistants' in his office. Despite that the expert affidavit speaks only in generic terms of what is reasonable in terms of hours expended, the Court concludes that the majority of hours billed constitutes good " 'billing judgment' " in this case. *See Norman,* at 1301 (quoting, *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941). The hours expended are reasonable, in that they are not " 'excessive, redundant or otherwise unnecessary.' "[19] *Id.* (quoting, *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939).

A fee applicant, however, cannot request compensation from the opposing party for hours spent on discrete or unsuccessful claims. *Norman,* 836 F.2d at 1302; *Copeland v. Marshall,* 641 F.2d 880, 891–92 (D.C.Cir.1980) (en banc). In this case, plaintiff's claim against the individual defendant was unsuccessful.[20] Accordingly, the Court cannot include hours spent in pursuit of this claim and will deduct 1.0 hour for the taking of the defendant's deposition by Mr. Kelly, 1.30 hours for a legal assistant's time spent summarizing his deposition, and 1.5 hours from Mr. Peppler's trial time.

Based on the foregoing, the Court finds the lodestar amount in this case to be $11,-071.50 (77.50 × $115.00 + 15.10 × $130.00 + 4.90 × $40.00 = $11,071.50).

### B. *Adjustments of the Lodestar*

■ Upon calculation of the lodestar, courts must then consider whether an adjustment to that figure is warranted for results obtained. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939; *Loranger,* 10 F.3d at 781; *Norman,* 836 F.2d at 1302. The Supreme Court has advised that the factor of " 'results obtained' " is especially important in cases such as this one, where the plaintiff technically prevails at trial but his success is limited in proportion to the litigation as a whole. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. In such cases, the district court must address the following questions: (1) were the unsuccessful claims related or unrelated to the successful ones, and (2) does the level of

---

17. The undersigned hopes this Order impresses upon the parties the unfortunate position within which they have placed the Court. The fee applications, and I stress the plural of the word, have been less than adequate. The record is abundantly clear on this point. Had the applications provided the Court with evidence consistent with the principles announced in *Norman,* they would have spared the Court great consternation, for although the undersigned is fortunate to have sound knowledge of the legal fees charged in this locality for this type of case based on numerous years of experience in the state system coupled with several similar actions in federal court, it would have been much easier to arrive at a reasonable rate based on objective evidence in the record. I point out that plaintiff's counsel is not the sole blameworthy party in this regard. Defendant's counsel submitted absolutely no evidence from which the Court could compare the reasonableness of plaintiff's requested rate.

18. Again, counsel for the defense has submitted nothing to the contrary.

19. Were it not for the fact that the Court considered Mr. Kelly's unnecessary motion to amend the complaint [defendant had not answered, and motion to dismiss is not considered a response for purposes of Rule 15] and Mr. Peppler's excessive supplementation of the fee request in its evaluation of skill exhibited by both attorneys in this case, and thus its decision to reduce the requested hourly rate, it would not permit compensation for these tasks.

20. This does not require a finding that the claim was frivolous as well. *See Hensley,* 461 U.S. at 438–49 n. 14[1b], 103 S.Ct. at 1942–48 n. 14[1b].

success achieved justify an award for the hours reasonably expended. *Id.*

■ In this case, plaintiff brought one claim against two defendants involving identical facts. She requested compensatory and punitive damages.[21] At the close of trial, the jury returned a verdict in favor of the plaintiff, finding that one defendant had intentionally discriminated against her on the basis of pregnancy and awarding her a total of $1,885.19 in compensatory damages and nothing in punitive damages.[22] Further, the jury determined that the individual defendant had not been plaintiff's employer and therefore could not be liable under Title VII.

Although technically there was but one claim in this case, it was interrelated both factually and legally as against two separate defendants. Thus, the Court must focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" in determining the appropriateness of an adjustment to the lodestar. *See Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941. In making this determination, the Court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* In either case, the Court's decision must be guided by the principles enunciated in *Hensley* and *Norman.*

Focusing on the overall success of this case, the Court must conclude that lodestar figure is excessive in light of the results obtained. As noted, plaintiff was not successful on her suit against the individual defendant, nor was she awarded punitive damages as pled. The Court, however, has already considered the failure of the suit against the individual defendant in its calculation of the lodestar and therefore will not consider it again. But, the gross disproportion between the amount of damages sought by plaintiff and that which was actually awarded is a factor to be considered in assessing the "results obtained" in terms of plaintiff's overall success.[23] The plaintiff recovered only a small fraction of her request for compensatory damages, and factoring in her punitive damages request,[24] the recovery was minuscule. As such, the Court concludes that the relief obtained by the plaintiff does not justify $11,071.50 in compensation to counsel.

The Court's analysis would not be complete, however, without consideration of the jury's ultimate finding of discrimination. Notwithstanding the small award, the jury nonetheless vindicated the plaintiff's statutory right to be free of unlawful discrimination in employment. Although this factor militates against a significant reduction, it must be noted that the plaintiff's lawsuit is not likely to result in "specific, identifiable benefits to non-parties." *See Popham,* 820 F.2d at 1581.

Based on the foregoing considerations, the Court concludes that an award of $11,071.50 is not reasonable in light of the overall success of this case.[25] Considering the limited

---

21. If the Court's memory serves it correctly, plaintiff requested approximately $650,000.00 in compensatory damages.

22. Regarding the compensatory damages, the jury determined plaintiff had sustained $1,385.19 for lost earnings and $500.00 for past pain and suffering. The jury found no damages for future earnings or future pain and suffering.

23. It is wholly appropriate for the Court to weigh that which was requested in damages against that which was actually recovered. *See Popham v. City of Kennesaw,* 820 F.2d 1570, 1580–81 (11th Cir.1987) (suggesting that a court must take this into consideration).

24. Plaintiff's request for punitive damages was in integral part of her case at trial. Moreover, counsel devoted time to the preparation of jury charges and a verdict form on the matter.

25. Although not a basis for its decision in this case, the Court has considered the twelve factors in the *Johnson* case and would note that this was not a difficult or complex case nor did it raise novel legal issues. Also, in relation to employment law litigation as a whole, the case did not require the expenditure of a great deal of time and labor by the attorneys. Moreover, although there is suggestion of a contingency fee arrangement in this case, it is not of the nature contemplated by § 1988.

In *Blum,* former Justice Brennan explains that contingency fee arrangements under § 1988 are "'entirely unrelated'" to those arrangements typically associated with personal injury tort cases which are directly proportional to the recovery. *Blum,* 465 U.S. at 903–04 n. *, 104 S.Ct. at 1551 n. * (quoting, *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 641 F.2d 880, 893 (1980) (en banc)). Instead, the contingency arrangement

results obtained, the Court cannot compensate counsel for the total amount of time expended on this case by he and Mr. Kelly. Were it not for the vindication factor, the Court would reduce the lodestar by 75%. However, considering the ultimate finding of discrimination against the defendant, Loyd Sims, Inc., the Court decreases the reduction to 50%, for a total award of $5,535.75.

Accordingly, plaintiff's motion for an award of attorneys' fees is GRANTED. Defendant is ordered to pay to the plaintiff the sum of five thousand, five hundred thirty-five dollars and seventy-five cents ($5,535.75) as a reasonable attorneys' fee.

DONE and ORDERED.

contemplated by § 1988 is one involving " 'a percentage increase in the [amount obtained by multiplying hours expended by hourly rate, and is designed] to reflect the risk that no fee will be obtained.' " *Id.*